By the Court. Duer, J.
That a bailee cannot, in ordinary *85 cases, dispute the title of his bailor, no more than a tenant that of his landlord, is familiar law, but we have not been able to discover that the rule applies with greater stringency to the relation between a common carrier and a shipper, than to any other form or species of bailment. The bill of lading, it is true, contains an admission of the ownership of the goods, and it contains also an admission of their actual shipment and of their sound condition. It appears, however, to be settled, that in neither of these cases does the admission operate as an estoppel. It is strong prima facie evidence of the truth of the facts to which it relates, but not conclusive (Berkely v. Watling, 7 Adol. and Ell. 29; Barret v. Rogers, 7 Mass. 297; Maryland Ins. Co. v. Ruden, 6 Cranch, 338).
The present case, therefore, stands upon the same ground as other bailments, in respect to which the general rule undpubt- ' edly is, that in an action by the bailor, a jus tertii, a right of property in a third person, cannot be set up by the bailee to defeat a recovery. But to this general rule there are many exceptions. The defendant in such a suit may doubtless show that the property had been taken from him by process of law, or by a person having a paramount title, or that the title of the bailor had terminated, or that he, the bailor, was himself a mere agent, and that, the return of the property to him had been forbidden by his principal (Shelby v. Scotsford, Yelv. 23; Edson v. Weston, 6 Cranch, 278; Ogle v. Atherson, 5 Taunt. 758; Watson v. Anderton, 1 Barn. and Ald., 450; Whittier v. Smith, 11 Mass. 211; Story on Bail. § 120, 266). Kor are these the only exceptions; we are strongly disposed to think that the right of thejrue owner may be set up, in all cases, where upon his demand, the property has been in fact delivered to him before the commencement of the suit^and are satisfied that such a delivery is an absolute bar, where it appears that the plaintiff had obtained possession of the property feloniously or tortiously, by felony, force, or fraud (Hardman v. Wilcock, 9 Bing. 382-4; King v. Richards, 6 Whart. Penn. R. 418; Story on Bail. § 582; Angell on Carriers, § 336). In Hardman v. Wilcock, this doctrine was expressly and with great decision, affirmed 'by two of the most eminent judges of the present day, Justices Alderson and Patterson, and was held to be entirely reconci *86 lable with all the prior authorities, including most of those on which the plaintiff’s counsel in the present case has relied.
In King v. Richards, a case bearing a close analogy to the present, the same doctrine, nearly in the terms in which we have stated it, was made by the Supreme Court of Pennsylvania the ground of its decision, and was even applied to defeat the claim of an innocent plaintiff to whom a bill of lading of the goods in controversy had been assigned for value by the fraudulent shipper. In this last case Mr. Justice Kennedy, as the organ of the court, delivered an elaborate and able opinion, in which he reviews with acute discrimination all the English cases, and sustains the conclusion at which he arrives by reasons of unanswerable force; reasons that commend themselves alike to the judgment and the conscience. We cannot at all hesitate to follow those decisions. It would be a serious reproach to the administration of justice, if the principle which they sanction—a principle not only of sound policy but of sound and obvious morality—were not felt and acknowledged to be the law. Ho one can doubt that he to whom stolen goods have been delivered, is bound to return them to the true owner when satisfied by due proof of the justice of his claim, and when the fraud is established by similar proof the moral obligation is exactly the same.
It would be a shock to the most "ordinary sense of justice to permit the thief or the swindler, in such cases, to recover in a subsequent suit the value of the goods from the honest bailee. The rule which forbids a bailee to deny the title of his bailor, confined within its proper limits, is wise and salutary; but if no exceptions are to be allowed, it would deserve to be condemned, in numerous cases, as arbitrary and unjust; confined within its proper limits, it inculcates and enforces the observance of good faith; carried beyond these limits, it would be an encouragement and a protection to injustice, violence, and fraud.
The defence, therefore, which is set forth in the answers in this case, was justly held upon the trial to be valid in law, and the only question that remains is, whether the truth of this defence was conclusively established by the record of the judgment which was given in evidence. The Chief Justice so decided, and we are satisfied,' upon full consideration, that his *87 decision, although not resting upon the authority of any case exactly similar in its circumstances, is sound in its principle, and as such must be sustained. It is true that a prior judgment is only conclusive when it appears that the same questions were litigated and determined in the suit in which it was rendered, and it may also be admitted that it is only conclusive between ’ parties and privies, and that the estoppel which it raises must be mutual in its operation. But if we mistake not, all these necessary conditions are fulfilled in the case before us.
The action of trover in which the judgment was rendered, related to the very goods now in controversy; the plaintiffs were Grant & Ensign, to whom, as owners, the goods have been delivered by the defendants, and the plaintiff here was the sole defendant. .The plaintiffs claimed to recover upon the grounds that they were the true owners of the goods at the very time they were shipped, and that the defendant had obtained the possession from then agent by collusion and fraud. The defendant denied their ownership, and asserted his own title as a purchaser in good faith and for full value from a person having the right to sell. The questions, therefore, of ownership and of fraud were directly at issue, and unless they had been determined in favor of the plaintiffs, they could not have obtained the judgment that was rendered. Exactly the same questions are raised by the pleadings in this case, and if this suit is substantially a suit between the same parties, or a privity has been shown to exist between the defendants and Grant & Ensign, it is impossible to deny that the judgment then rendered must be regarded as conclusive.
It is a- mistake to suppose that the term parties, in the sense of the rule which renders a prior judgment conclusive upon those who sustain that character, is restricted to those who are parties upon the record. On the contrary, it includes all who have a direct interest in the subject matter of the suit; a right to make a defence, or control the proceedings (1 Greenleaf on Evid., p; 523; Smith’s Lead. Cases; Duchess of Kingston’s case, 20 Howell State Trials, 538; Morgan v. Thorn, 9 Dowl. 228). Grant & Ensign were parties upon the record as well as in interest in the trover suit, and in this, although not parties upon the record, they are certainly parties in interest. It *88 appears from the pleadings—for the allegations in the answers to that effect are not denied in the replies—that they have given to the defendants a satisfactory indemnity, and that upon the faith of that indemnity, the goods were surrendered and this suit is defended.
It is for them, therefore, that this defence is made; they have a direct interest in the result of the suit, and in consequence of that interest, have acquired a right to control its proceedings. We are therefore justified in saying that it is by them that this suit is in fact defended, and that they as parties have set up as against the plaintiff the same title which in the former suit they succeeded in establishing against him. The controversy is the same, and substantially the parties, and the prior judgment therefore conclusive.
Even were it granted that those only are to be deemed parties, in the sense of the rule, who are parties upon the record, it is certain that the indemnity which Grant & Ensign have given has created a privity between them and the defendants which authorizes and indeed renders it the duty of the defendants to set up, for their protection, the former judgment as a bar to the plaintiff’s recovery. It is said by Mr. Greenleaf, and our Supreme Court, in the case of Rapelye v. Bruce (4 Hill, 19), has so decided, that he who covenants for the results or consequences of a suit between others (and the indemnity here given is equivalent to such a covenant), by that act connects himself in privity with the proceedings so as to render the record of the judgment in that suit conclusive evidence against him (1 Greenleaf, p. 692, § 523). If Grant & Ensign, therefore, would be concluded by a judgment in favor of the plaintiff in this suit, that is, estopped from denying him to be the true owner of the goods in controversy, it would be most unreasonable to hold that they may not be aided by the defendants in barring his recovery, by setting up a former judgment, which concludes him from denying their title. There ought not to be two judgments directly in conflict upon the same question, and that conflict is only to be prevented by preventing the plaintiff from controverting the judgment that has been obtained against him.
The objection upon which the counsel for the plaintiff seemed *89 greatly to rely, that the record of the proceedings in the former suit, had an opposite judgment been rendered, would not have been evidence against the defendants, has been answered by the observations already made. Such a record would have been conclusive evidence against the defendants upon the questions decided, exactly for the same reasons that the plaintiff is concluded by the record now produced. The defendants would be concluded by the privity that has been shown to exist between them and Grant &■ Ensign. It was admitted upon the argument that the judgment against the plaintiff has been affirmed upon a writ of error, and the objection, therefore, that the record produced did not show the judgment to be final, if not meant to be abandoned, must be considered as overruled.
For the reasons that have now been given, without entering upon other questions which our examination of the pleadings has suggested, the exceptions stated in the case to the ruling and charge of the Chief Justice are overruled, and the motion for a new trial denied with costs.