## CHARLES BLIVEN AND EDWARD B. MEAD, APPELLANTS, *v.* THE HUDSON RIVER R. R. CO., RESPONDENTS.

*Shipper—Bailor—Carrier may set up Right of Owner against, when.*

The right of the true owner of goods may be set up by the carrier against the shipper or bailor in all cases—where the property has been delivered up to the true owner, either voluntarily or by legal coercion.

PARKER, J.—On the 2d day of September, 1859, the Plaintiff delivered to the Defendants, at their depot in the village of Sing Sing, Westchester County, twenty-nine cases of saw plates and handles, of the value of $4,338.82, for transportation to the city of New York, which were on that day placed by the Defendants in their freight cars for that purpose. Before the regular hour for the departure of the train in which they were to go, a complaint was made on oath, by one Cheeseman, to a justice of the peace of Sing Sing, to the effect that the said merchandise had been stolen or embezzled from the Eagle Saw Manufacturing Company at Sing Sing, of which company Cheeseman claimed to be the secretary, and that he suspected that the said property was concealed in a railroad car at the Sing Sing depot. The magistrate thereupon issued a warrant to search for the property, and delivered it to a constable of the town, who, in proceeding under it, on the morning of the 3d of September, forcibly opened the car in which the merchandise was locked, and seized and took the same before the justice, who thereupon sent the same to the place of business of the said manufacturing company, and there delivered the same to said Cheeseman for said company.

The Plaintiff Bliven was at such place of business, on the morning of the day on which the merchandise was so delivered, and was there made acquainted with and fully knew all the circumstances attending the taking of said merchandise out of the possession of the Defendants as before stated.

It further appears by the findings of the referee before whom the cause was tried, that the certificate by the filing of which, on the 28th of November, 1858, the company became incorporated, provided for the management of its affairs by five trustees, of

whom Plaintiff Bliven was one, and Cheeseman one, and that, by the by-laws, three trustees constituted a quorum; that on the organization of the company, a president, treasurer, and secretary were chosen from the five trustees, Bliven being the treasurer. The manufacturing carried on by the company was done in the Sing Sing Prison, by the hired labor of convicts, in shops provided for the company, and under a superintendent employed by the company. Immediately upon the organization a contract was made by the company with the Plaintiffs, by which Plaintiffs were to have the sale of all the articles made by the company, on a commission, and were to make advances to the company, and hold all the articles consigned to them as security for such advances; and subsequently, on the 30th of June, 1859, the company gave the Plaintiffs a chattel mortgage on all the fixtures and stock, manufactured and unmanufactured, and all their other goods and chattels then or thereafter to be at the works in Sing Sing Prison, as security for the payment to Plaintiffs, on demand, of all advances made, or to be made, by them to the company.

On the 31st of August, 1859, at an adjourned meeting of the trustees, the said Cheeseman and one other trustee, in the absence of the others, assumed to remove the president, and declare his office as trustee vacant, and to elect one Francis trustee in his place; and at a subsequent time in New York, to which they adjourned, assumed, in conjunction with said Francis, to remove the secretary from his office as such, and to appoint Cheeseman in his place; Cheeseman thereupon proceeded to Sing Sing, to the works of the company in the prison, and took possession as secretary, notifying Hawley, the secretary, of his removal.

On the 2d of September, in the absence of Cheeseman and the superintendent, Hawley, still claiming to be secretary, went with Bliven to the premises, and caused the articles of merchandise in question, which were not in a state of completeness for the market, to be boxed up and delived to Bliven for the Plaintiffs, and he, thereupon, delivered them, as before stated, to the Defendants, for transportation to New York, where was the Plaintiffs' place of business for selling the merchandise received by them for sale.

It does not appear from the findings of the referee that the Plaintiffs had made any advances to the company, or that the company was at that time indebted to the Plaintiffs.

There is no dispute that the ownership of the goods was in the manufacturing company, and the facts found fall short of showing that the Plaintiffs had any lien upon them. The taking of them by Bliven on the 2d of September was not warranted by the original contract, for that contemplated only the consignment to the Plaintiffs of articles fitted for the market. Neither was it warranted by the subsequent mortgage, for there was no indebtedness, so far as appears, on which to rest a lien, by virtue of it. The description of the mortgage given by the referee is that it was upon "all the engines and shafts, tools, anvils and fixtures, stock, manufactured and unmanufactured, or in course of manufacture, and all other goods and chattels of the company now or hereafter to be at the works in Sing Sing Prison, as security for the payment to the Plaintiffs on demand of all advances made, *or to be made*, by them to the company. The fact of the existence of such a mortgage does not carry with it the presumption of an existing indebtedness. As between the Plaintiffs and the company, therefore, so far as appears, not only the ownership, but the right of possession, belonged to the company.

The goods, then, belonging, in fact, to the company, without any right of possession in the Plaintiffs, the delivery of them, by the justice, at the company's shop, from which they had been taken, to a person having the actual possession of it for the company, was a delivery to the company. The Defendants then are entitled to take the ground that the goods were taken from them by valid legal process, and under such process delivered to the true owner.

If it is said that the evidence shows an indebtedness from the company to the Plaintiffs, we are not at liberty to go into the evidence for the facts, but must take them from the findings of the referee. If we were at liberty to examine the evidence and form our own conclusions of fact, we should see Bliven present at, or immediately after, the delivery up of the goods, at the com-

pany's rooms, claiming them under Plaintiffs' mortgage, and as agent of the company, and directing Rooney, the superintendent, who was in charge of the establishment for the company, to keep them, and let no one take them without his (Bliven's) consent; and that Rooney thereupon put them back where they belonged, and where they had been the day before, and that they remained about a month. This, I think, we should have to consider, either as a taking of them into his own possession, or as consenting to the possession of the company, either of which would exonerate the Defendants.

But as the case stands upon the findings of the referee, I think it may well be considered a case of delivery to the true owners, through the regular process of the law; so that, even if the mere taking of them out of the Defendants' possession by valid legal process, would not alone be a defence, there can be no doubt that, on this ground, a good defence was made to the action. It is well settled that the right of the true owner may be set up by the carrier as a defence against the shipper or bailor, in all cases where the property has been delivered up to him by the carrier, whether voluntarily on demand, as in Bates *v.* Stanton (1 Duer, 79), or taken by process in a suit instituted for that purpose (Van Winkle *v.* The U. S. Mail Steam Ship Co., 37 Barb. 122; Burton *v.* Wilkinson, 18 Vermont R. 186).

But my associates not passing upon the question whether the property was delivered to the true owners, desire to put this case upon the doctrine that the common carrier is exonerated from his obligation to his bailor, when the property of the latter is taken from him by due legal process, provided the bailor is promptly notified of such taking.

It is to be remembered that the Plaintiff Bliven had notice of the taking of the merchandise from the Defendants, with all the circumstances attending it, on the morning when it occurred. So that the case is fully within the doctrine just referred to.

The judgment of the Supreme Court should therefore be affirmed. JOEL TIFFANY,