[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 546 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 547 
The first inquiry is whether the plaintiff lost its lien for freight upon the oats by failing to deliver them to Hoyt Co., pursuant to the bill of lading, and warehousing them with the defendant in its own name. This will, I think, depend upon the question whether Hoyt Co., the consignees, were in default in not receiving the oats in the time they were required so to do by the bill of lading so as to confer upon the carrier the right to remove them from its boat by placing them elsewhere. It is said that a lien can exist only while the lienor retains the possession of the property subject thereto. This is the undoubted rule applicable to the rights of the lienor and general owner. If the former delivers possession of the property to the latter he thereby waives his lien. (McFarland v. Wheeler, 26 Wend., 467.) But in this case the oats were not so delivered, but placed by the plaintiff, in its own name, in the warehouse of the defendant; *Page 549 
and the question is, whether this discharged the lien, assuming that by the default of the consignees in receiving them the plaintiff had the right to remove them from its boat by placing them elsewhere. It was held in Fisk v. Newton (1 Denio, 45) that, when the consignee refused to receive the goods, the carrier might discharge himself from further responsibility by depositing the same with a store-keeper in good credit, for the owner, taking his receipt for the same. Whether if he so deposited, subject to his lien, he preserved the same, was not involved or determined in the case. But I am unable to see any but the most technical reason for holding that, under such circumstances, the lien would be lost. These reasons are that the carrier has parted with the actual possession, which is necessary to uphold the lien; and, second, that it is, substantially, a delivery to the owner. As to the first, I concur with the observation of Senator VERPLANCK, in his opinion in McFarland
v. Wheeler (supra). He says, "it is true that the possession thus essential to the lien need not always be the direct and actual possession of the party; that of his agent or servant, or the keeper of a warehouse acting under his authority is also his own, for this and many other legal purposes." The senator evidently refers to a warehouse belonging to another than the carrier, the keeper of which acts under the authority of the carrier in respect to the particular goods deposited. As to these the keeper acts under the authority of the carrier, and his possession may be regarded as that of the carrier, for the purpose of preserving the lien. The delivery for the owner is subject to the condition of his paying the freight; and he cannot, otherwise, obtain actual possession of the goods. It is said in some of the cases, that a lienor has no right to subject the goods to any additional lien in favor of another; that by so doing he would be liable for a conversion of the goods. This, in the cases where the rule was applied, is correct, but not so as to a carrier who has been obliged to deposit the goods in a warehouse because of a refusal of the owner to receive them. Then the creation of a further lien for the warehouse charges *Page 550 
is made necessary by the act of the owner; and it is immaterial to him whether the carrier creates this additional lien in his own favor by depositing them in a warehouse of his own, if he has one, or in behalf of another in whose warehouse he makes the deposit. In the present case the plaintiff did not deposit the oats for the owner, but in its own name, as its property. Such a deposit, if made in consequence of the default of the owner in receiving, would no more discharge the lien than if made by the plaintiff in a warehouse of its own. The keeper, as in the case of a deposit for the owner subject to the lien, had possession by authority of the carrier; and his possession is to be deemed that of the carrier, for the purpose of preserving the lien.
The question, therefore, is whether the owner was so far in default in receiving the oats as to confer upon the plaintiff the right to abandon further attempts to deliver to him, and obtain the immediate use of its boat by depositing them elsewhere. If he was, the deposit was rightful, and the lien preserved. If he was not, it was wrongful and in violation of the rights of the owner, and a conversion of the oats by the plaintiff, which, it is clear, destroyed the lien.
The defendant offered to prove that the arrival of the boat in New York was reported to the owner after twelve o'clock (noon) of the fifth of November; that, by the usage of the port, the day upon which the arrival was reported at that time is excluded from the number of days provided for receiving the goods; that on the eighth of November the owner directed the defendant to deliver the cargo at the floating elevator of one Knapp in the East river; that the boat was on that day taken by the defendant's servants to the elevator and a part of the cargo discharged, but the unloading was retarded to some extent by an accumulation of freight, unloaded from other boats of the plaintiff. Near the close of the day, it becoming certain that the residue of the cargo could not be unloaded there that day, the plaintiff directed its servants to take the boat to the warehouse of the defendant and store the oats there; which was done accordingly, in the name of the *Page 551 
plaintiff, without giving any notice whatever to the owner of an intention so to do. The bill of lading provided that the consignees should have three week days after arrival and notice, regardless of the weather, to discharge the cargo; and for each and every day of demurrage over and above the three days, they should pay the carrier, as damages, one and a half per cent a day upon the entire amount of freight, including tolls upon the cargo. The intention of this last clause was, I think, to give the consignees a right to detain the boat, if necessary, a reasonable time after the expiration of the three days, to complete the delivery; which necessity the consignee might in the first instance determine. But it was not the purpose of the clause to give the consignee more than a reasonable time to complete the unloading after the expiration of the three days. This right of the consignee further to detain the boat must, I think, be terminated by a notice given by the carrier to the effect, if the goods shall not be received within some reasonable time, therein specified, they will be stored elsewhere. This construction is warranted by the language of the bill and the rules of law; otherwise, no absolute right whatever is conferred by the clause upon the consignee. If the carrier has the right immediately upon the expiration of the three days, at once, without any notice to the consignee, to deposit the property in a warehouse selected by him, at the owner's expense, and abandon all further attempt to deliver to the owner, the clause secures no benefit to the owner; it merely gives an option to the carrier to give further time upon the terms specified, if he pleases, and if not, store the property elsewhere. This is not the fair construction of the clause. It follows that depositing the oats by the plaintiff in the defendant's warehouse, under the circumstances, was in violation of the rights of the owner, and tortious, and consequently put an end to the plaintiff's lien for freight.
The remaining question, is whether the defendant, having received the property by bailment from the plaintiff and delivered the same upon demand to the true owner, he can *Page 552 
set up the latter facts as a defence to an action by the plaintiff for the conversion of the property.
The right of a bailee to set up title in a third person, as against the claim of his bailor, has been much considered. It is said that neither a wharfinger nor warehouse man can deny the right of the person from or for whom he receives the property. That they are the agents of the persons from whom they receive the property, and cannot dispute their title. (Edwards on Bailments, 305, 306; Story on Bailments, §§ 450, 482.) This general rule is sustained by numerous cases, a citation of which is unnecessary. It applies in all cases where the bailee seeks to avail himself of the title of a third person for the purpose of keeping the property himself from the bailor, and to all cases where the bailee has not yielded to a paramount title in another. The question in this case is whether it applies in case he has done so. It does not apply where the property has been taken from the bailee by due process of law. (Story on Agency, §§ 211, 249;Bliven v. The Hudson River Railroad, 36 N.Y., 403.) Nor where the bailor has obtained possession feloniously or by force, or fraud. (Bates v. Stanton, 1 Duer, 79; King v. Richards, 6 Wharton, 418.) Upon principle I can see no difference. As to the right of the bailee to deliver the property to the true owner upon demand by him, as against his bailor having no title, depending upon the mode in which the bailor obtained possession — how can this affect the question? The bailee could not set up thejus tertii against his bailor, however tortious the latter may have acquired possession, unless the owner has claimed the property and the bailee has yielded to the claim. Why may he not set up the right under the same circumstances when the possession of his bailor was lawfully acquired? A bailor can confer upon his bailee no better title than he has himself, except in cases of negotiating bills of lading and like cases. If the owner demands the property of the bailee and he refuses to deliver it to him, he is at once liable to him in an action for its conversion. This is a tort, and it would be *Page 553 
somewhat anomalous, if the bailee should shield himself from this by delivering the property to the owner, that he could not show such facts as a defence to the groundless claim of the bailor for the property. I think the best considered cases hold that the right of a third person to which the bailee has yielded, by delivering the property, may be interposed in all cases as a defence to an action brought by the bailor, subsequently, for the property. When the owner comes and demands his property he is entitled to its immediate delivery, and it is the duty of the possessor to make it. The law will not adjudge the performance of this duty tortious as against a bailor having no title. Biddle
v. Bond (6 Best Smith, 224) was thoroughly considered, and the above conclusions established upon grounds which I think unanswerable. (See also, White v. Bartlett, 9 Bing., 382, and note a; Cheesman v. Exall, 6 Ex., 341; Dixon v. Yates, 27 Eng. Com. Law, 92.)
The receipt given by the defendant was not such as is required by the factor's act. (Laws of 1858, chapter 326.) The provisions of that act have no application to the case.
The order appealed from reversing the judgment recovered by the plaintiff and directing a new trial must be affirmed and judgment absolute given for the defendant, upon the stipulation.
All concur.
Order affirmed and judgment accordingly.