[Filed February 11, 1890.]

# A. S. JEWETT, RESPONDENT, v. WILLIAM OLSEN, APPELLANT.

PROPERTY IN HANDS OF CARRIER—SEIZURE OF BY LEGAL PROCESS—CUSTODY OF THE LAW.—When property is in the hands of a carrier for transportation, and in the course of transit is seized upon legal process sued out against the owner of the property, and taken out of the carrier's possession, such property is placed in the custody of the law, and is so placed by a superior power, the power of the State, and excuses the carrier from liability for not delivering the goods.

COMMON CARRIER—GOODS TAKEN FROM HIS POSSESSION—HIS DUTY.—When goods are taken out of the possession of the carrier by legal process, he should give notice forthwith to the parties interested.

APPEAL from the circuit court for Multnomah county.

*T. B. Handley*, for Respondent.

*X. N. Steeves*, for Appellant.

LORD, J.—The facts are that on the eighteenth day of November, 1887, one Northrob delivered at Tillamook, Oregon, a lot of apples to Wm. Olsen, to be carried on the steamer "Rosa Olsen," and delivered at Portland. The apples were not marked in any way, nor consigned to anyone. On the twenty-first day of November, 1887, at Astoria, the constable came on board of the steamer with writs of attachment, and by virtue of the same levied upon the apples and took them off the steamer and sold them. These actions were against Northrob and were for the purchase price of said apples, and judgment was rendered in them on February 13, 1888. When the apples were seized under the writs of attachment Northrob was at once notified, but remained passive and made no defense. On the thirteenth day of February, 1888, the said Northrob sold said apples to one Jewett, who since has brought the present action against Olsen for failure to deliver the apples according to the contract of shipment made by Northrob with Olsen. It will be noted that the property when delivered to the carrier was not marked nor consigned to anyone, but was to be delivered at Portland, and presumably to Northrob, or to whomsoever he should authorize to receive them, by assignment or otherwise,—that while

such property was *in transitu*, it was seized under writs of attachment at an intermediate port, and being perishable property, was sold, but that Northrob, who was then the owner of the apples, was immediately notified, in order that he might make his defense to the suits against him on which the property had been seized, and that he disregarded such notice and refused or failed to make any defense in the premises; but two or three months subsequently sold the property to the plaintiff in this action. As a separate defense to the action, the proceedings, etc., in the writs of attachment were set up, and upon demurrer were sustained, as stating facts sufficient to constitute a defense, and the demurrer overruled; but during the trial, when offered in evidence in support thereof, were excluded by the court, and now constitute one of the assignments of error upon this appeal. Upon the facts, the proceedings under which the goods were taken by the officer from the custody of the carrier were against Northrob, to whom the property belonged, and who subsequently sold them to the plaintiff in this action. It will be seen, then, that the question we are to decide is whether a common carrier is excused from liability for not carrying and delivering the goods, when they are, without any fault or fraud on his part, seized by virtue of a legal process and taken out of his possession. "That this will excuse the carrier," says one author, "is now almost universally conceded by the courts, in the absence of connivance or collusion on the carrier's part, and it seems to make no difference by whom or against whom the process is sued out, if it be valid." Hatch on Carriers, § 396. "If this defense were not valid," says another learned author, in a note, "it might compel the party to resist the acts of a public officer in the discharge of his duty, which the law will never do." 2 Redf. on Railways, 158.

In the supreme court of the United States, where goods in the hands of a carrier had been attached by a third party in a suit brought by the consignees on a bill of lading, Mr. Justice Nelson said: "After the seizure of the

goods under the attachment, they were in the custody of the law, and the defendant could not comply with the demand of the plaintiff without a breach of it, even admitting the goods to have been at the time in his actual possession. The case, however, shows that they were in the possession of the sheriff's officer or agent, and continued there until disposed of under the attachment. It is true that these goods had been delivered to the defendants as carriers by the plaintiffs, to be conveyed for them to the place of destination and were seized under an attachment against third persons, but this circumstance did not impair the legal effect of the seizure or custody of the goods under it, so as to justify the defendant in taking them out of the hands of the sheriff. The right of the sheriff to hold them was a question of law to be determined by the proper legal proceedings, and not at the will of the defendant nor that of the plaintiff. The law on this subject is well settled, as may be seen on a reference to the cases collected in §§ 452, 290, 350 of Drake on Attachment, second edition." *Stites* v. *Davis*, 1 Black. 101; see also The Idaho, 93 U. S. 575. In *Railway Co.* v. *Yohe et al.*; 51 Ind. 184, the objection was taken by demurrer, and sustained by the court, that the answer did not state facts sufficient to constitute a defense, but it was on the ground of the want of an averment that the defendant gave immediate notice to the plaintiffs that the goods had been seized and taken out of his possession, which is duly alleged in the answer herein.

In delivering the opinion of the court, Mr. Justice Downey said: "It is impossible for the carrier to deliver the goods to the consignee when they have been seized by legal process and taken out of his possession. The carrier cannot stop, when goods are offered him for carriage, to investigate the question of ownership. Nor do we think he is bound, when the goods are so taken out of his possession, to follow them up and be at the trouble and expense of asserting the claim thereto of the party to or for whom he undertook to carry them. We do not think it is material what the form of process may be. In every case

the carrier must yield to the authority of legal process. After seizure of the goods by the officer, by virtue of the process they are in the custody of the law, and the carrier cannot comply with his contract without a resistance of the process and a violation of law.   The right of the sheriff to hold the goods involved questions which could only be determined by the tribunal which issued the process, or some other competent tribunal, and the carrier had no power to decide them.   If the goods were wrongfully seized the plaintiffs have their remedy against the officer who seized them, or against the party at whose instance it was done.   As between the parties the process would be no justification if the plaintiffs were the owners and entitled to the possession of the goods.   The carrier is deprived of the possession of the goods by a superior power, the power of the state—the *vis major* of the civil law—and in all things as potent and overpowering, as far as the carrier is concerned, as if it were the "act of God or the public enemy."   In fact, it amounts to the same thing; the carrier is equally powerless in the grasp of either."   In *Railroad Company* v. *Wilcox, Gibbs & Co.*, 48 Ga. 433, where goods were delivered to a common carrier for transportation and were seized by legal process and taken out of his possession by the sheriff, and the carrier forthwith gave notice to the consignor and consignee, and they made no reply and took no further notice of the proceedings, it was held that the carrier had a legal right to presume they had abandoned the property as subject to legal process, which had seized it.   And further, that a seizure under the warrant of the goods while in the carrier's possession would be a good excuse for their non-delivery.   In *U. S. Mail S. Co.* v. *Van Winkle*, 37 Barb. 122, a case where goods were seized on attachment, the court held:   "If the goods are taken from a bailee or carrier by authority of law, or any case coming within these exceptions, there is no doubt that it is a good defense to an action by the bailor or shipper for a non-delivery."   In *Bliven* v. *Railroad Co.*, 36 N. Y. 403, it was held that a com-

mon carrier is exonerated from his obligation to his bailor, where the property of the latter is taken from him by legal process, and where the carrier immediately notifies him of such taking. *Burten* v. *Wilkins*, 18 Vt. 186; *Edson* v. *Weston*, 7 Cow. 278.

Now, according to the facts, Northrob was the owner of the apples at the time they were seized under writs of attachment upon a debt or debts against him, and taken out of the possession of the defendant, and when he was notified of such attachment and seizure, and yet he disregarded the notice, and allowed the proceedings to go on without any defense thereto, and subsequently sold the property and his claim thereto to the plaintiff. At the time of the seizure there was no consignee to whom the goods were delivered, nor were they marked, nor any other person known to the carrier other than Northrob, upon whose debts the property was seized as owner, and whose subsequent conduct in selling it indicates that he was the recognized owner. When property is in the hands of a carrier for transportation, and in the course of transit is seized upon process sued out against the owner of the property, and taken out of the carrier's possession, such property is placed in the custody of the law, and is so placed by a superior power—the power of the State—and excuses the carrier from liability for a non-delivery.

It follows that the judgment must be reversed and a new trial ordered.