8398.　SOUTHERN RAILWAY COMPANY *v.* HODGSON
BROTHERS COMPANY.

The court did not err in rendering judgment in favor of the plaintiff
against the Southern Railway Company in the garnishment case.

DECIDED OCTOBER 31, 1917.—ADHERED TO ON REHEARING FEBRUARY 14, 1918.

Garnishment; from city court of Athens—Judge West. December 18, 1916.

*Blanton Fortson,* for plaintiff in error.

*Wolver M. Smith, Erwin, Rucker & Erwin,* contra.

BLOODWORTH, J.　Hodgson Brothers Company brought suit
against Harris Brothers Grain Company, a non-resident of this
State, by attachment and garnishment, the summons of garnishment being served upon Southern Railway Company, July 14,
1915.　On May 19, 1916, the plaintiff obtained judgment on the
said attachment against Harris Brothers Grain Company for $175
principal and cost of suit, and a judgment against the Southern
Railway Company for the same amount on the garnishment.　In
its answer to the summons of garnishment the Southern Railway
Company denied being indebted to the defendant, and the matter
was submitted to the trial judge, acting as both court and jury.
The facts may be briefly outlined as follows:　In June, 1915, the
Fort Worth & Rio Grande Railway Company received from Harris
Brothers Grain Company at Rochelle, Texas, certain sacks of oats,
which, as shown by the bill of exceptions, were consigned to Harris
Brothers Grain Company, Greenville, S. C., but which the garnishee's amended answer states were consigned to the Acme Feed Company, Greenville, S. C., with instruction from the shipper to notify
Hodgson Brothers Company at Athens, Ga., upon the arrival of
the car at Greenville, S. C.　A bill of lading was issued with draft
attached, drawn by Harris Brothers Grain Company, for $559.30,
with instruction that the amount of the paid freight-bill was to be
deducted from this amount and accepted as cash.　This shipment
of oats was received by the Southern Railway Company from its
connecting carrier, and by it transported to Greenville, S. C.,
where the oats arrived on or about July 10, 1915.　Meanwhile
the invoice covering the shipment had been transferred by Hodgson
Brothers Company to the Acme Feed Company, of Greenville,
S. C., and, upon the order of Hodgson Brothers Company, Harris
Brothers Grain Company having notified the Southern Railway

48

Company on June 15, 1915, that the car of oats was for Hodgson Brothers Company, of Athens, Ga., it was delivered by the railway company to the Acme Feed Company, on July 10, 1915, on payment by that company to the railway company of $559.30, $240.40 of which was the freight charges to which the railway company was entitled; thus leaving a balance in the hands of the railway company of $318.90. After the car of oats had been delivered as stated above, the Southern Railway Company received, on or about July 16, 1915, an order from Harris Brothers Grain Company, dated July 14, 1915, instructing the railway company to deliver the car of oats to A. M. Hayes of Greenville, S. C., but at that time the car had already been delivered to the Acme Feed Company as stated above.

After the summons of garnishment was served on July 14, 1915, on the Southern Railway Company, the defendant Harris Brothers Grain Company brought suit against the initial carrier, the Fort Worth & Rio Grande Railway Company, and the Southern Railway Company, in the county court of Dallas county, Texas, on account of the alleged wrongful delivery of this car of oats, and on February 17, 1916, a judgment was obtained against the Fort Worth & Rio Grande Railway Company for $399.10, the Southern Railway Company's plea of privilege having been sustained by the Texas court, and the suit as to it having been dismissed. The judge having found against the garnishee, the Southern Railway Company, it made a motion for a new trial, upon the overruling of which it excepted.

We hold that the court properly gave Hodgson Brothers Company judgment against the Southern Railway Company in the garnishment proceedings. Civil Code (1910), § 5124.

*Judgment affirmed. Broyles, P. J., and Harwell, J., concur.*

ON REHEARING.

BLOODWORTH, J. The decision in this case is right both in law and good morals. The amended answer of the Southern Railway Company is in part as follows: "2. That the car of oats was received by your respondent, Southern Railway Company, from its connecting carrier, and by it transported to Greenville, South Carolina, on or about the 10th day of July, 1915. The Acme Feed Company held the invoice from Hodgson Brothers, Athens, Georgia, dated June 15th, for the amount of $559.30, and upon the

arrival of the car it was delivered to the Acme Feed Company upon their paying your respondent $559.30, which, less the freight charges of $240.40, leaves $318.90 in the hands of your respondent. 3. Your respondent avers that this car of oats was delivered to the Acme Feed Company upon the order of Hodgson Brothers Company, Athens, Georgia, the consignee, and upon the order of Harris Brothers Grain Company, the consignor. 4. Your respondent further avers that after the car of oats had been delivered, as above set forth, and on or about July 16, 1915, your respondent received another order from the Harris Brothers Grain Company at McKinney, Texas, dated July 14, 1915, instructing your respondent to deliver the said car of oats to one A. M. Hayes of Greenville, South Carolina, but at this time the car had already been delivered to the Acme Feed Company upon the instructions above outlined." Note that this answer shows that at the time the summons of garnishment was served upon the Southern Railway Company it had in its hands $318.90, the net proceeds of a car of oats which had been sold by Harris Brothers Grain Company, and upon their order delivered to the Acme Feed Company; the sale was complete in all its essentials, and prior to the sale no person, firm, or corporation other than Harris Brothers Grain Company had or claimed any title, right, or interest in the oats, and the sale passed the title thereto into the Acme Feed Company. The fact that Harris Brothers Grain Company, after Hodgson Brothers Company had held up this money by garnishment, brought suit against the Fort Worth & Rio Grande Railway Company, the initial carrier, can not deprive Harris Brothers Grain Company of the ownership of the fund. Can it be said that under the circumstances, as shown by the above statement of facts and the answer of the Southern Railway Company, there was any conversion of the goods by the railway company? It will be noted that the Southern Railway Company, in its answer, says: "Your respondent avers that this car of oats was delivered to the Acme Feed Company upon the order of Hodgson Brothers Company, Athens, Georgia, the consignee, and upon the order of Harris Brothers Grain Company, the consignor." If this car of oats was delivered to the consignee upon the order of the consignor, the full purchase price paid, and no transfer or assignment of the bill of lading shown, can the consignor complain? If the Southern Railway

Company had remitted the net proceeds of the car of oats to Harris-Brothers Grain Company could they have complained? And can it make any difference that a portion of the fund went to the payment of a judgment debt against Harris Brothers Grain Company?

We recognize the general principle that "A shipper, by consigning goods to his own order and attaching to the bill of lading a draft for the price of the goods, indicates an unequivocal intention to retain title to them until his draft is paid," and that "any distinct act of dominion, inconsistent with the owner's right, wrongfully exercised over his property by another, may amount to a conversion, whether the wrongdoer exercised such dominion for his own use or for the use of a third person." However, in the instant case the Southern Railway Company has not wrongfully exercised any act of dominion over the property of Harris Brothers Grain Company, but it simply carried out its orders, and, upon the payment of the purchase price, delivered the oats to the person to whom they were consigned and to whom it was otherwise ordered to deliver them. What became of the bill of lading is not shown by the evidence. In the cases cited by the plaintiff in error the goods were delivered without the knowledge or consent of the shipper; there was "loss of goods by wrong delivery, negligently made by the carrier." Of course, in such cases, there was a conversion. In this case the plaintiff in error insists that there was a conversion because the oats were not delivered in accordance with instructions of the letter of Harris Brothers Grain Company to the Southern Railway Company on July 16th. This position is untenable. The oats at that time had already been delivered to the Acme Feed Company, as shown by the 4th paragraph of the amended answer copied above. If the railway company would have the right to deliver the oats to Hayes, a third person, on "another order from the Harris Brothers Grain Company," without additional transfer, assignment, or endorsement of the bill of lading, a fortiori, they had the right to deliver them, by similar instructions, to the party to whom they were consigned. Should Harris Brothers Grain Company require payment of the entire amount of their judgment, they would thus twice receive pay for the car of oats. As before stated, there is not a word of evidence in the record to show what became of the bill of lading, but, grant-

ing that Harris Brothers Grain Company is the lawful holder thereof, it occurs to us that had the Texas court had before it all the facts, the judgment against the initial carrier would not have been rendered, because the "Carmack amendment" to the interstate-commerce law provides that in interstate transportation of property the lawful holder of the bill of lading shall be entitled to recover for the "full actual loss, damage, or injury," and the facts in this case show that Harris Brothers Grain Company sustained no "loss, damage, or injury" by reason of any act of either of the carriers involved. However, this question is foreclosed by the judgment of the Texas court.

But apart from what is said just above, Hodgson Brothers Company should not suffer by reason of the fact that such judgment was rendered. The money from the sale of the oats was seized by judicial process. In Wells Fargo & Company Express v. Ford, 238 U. S. 503 (35 Sup. Ct. 864, 59 L. ed. 1431), the first headnote is as follows: "The carrier can not be held responsible for goods taken from its custody by valid legal process provided it gives the owner prompt notice of the suit so that he may have an opportunity to protect his interest," and Mr. Justice Lamar, speaking for the court, said (p. 506): "If the carrier gives such notice and the consignor fails to appear, or fails in his defense, and the property is seized, held, or sold under judicial process, the carrier can not thereafter be held responsible for yielding to what must then be treated as vis major." In Merz v. Chicago & Northwestern Ry. Co., 86 Minn. 33 (90 N. W. 7), is the following headnote: "It is a sufficient defense in an action for conversion brought against a common carrier to prove that there has been a seizure of the property under legal process, but the burden of proof is upon such carrier to show that the process was regular and valid upon its face. It is the duty also of the carrier, in case of a seizure under process, to notify the shipper promptly of the pendency of the legal proceedings in order to enable him to make a proper defense. If this notice is promptly and properly given, an action for conversion will not lie, for the carrier has a right to presume that the party notified will attend to his property and protect it in the suit." See also Ohio & Mississippi Ry. Co. v. Yohe, 51 Ind. 181 (19 Am. R. 727); Blevin v. Hudson River R. Co., 36 N. Y. 403.

In this case it can make no difference that the proceeds of the sale of the oats, and not the oats themselves, were seized. If the

Southern Railway Company failed to give the proper notice of the garnishment suit to Harris Brothers Grain Company, and because of that failure they had no opportunity to appear and protect their rights (if any they had) under the garnishment proceedings, and by reason of this failure to give notice they had the right to proceed against the initial carrier and did obtain judgment against it, and the Southern Railway Company is required to pay the same, it will be paying for its own negligence, and Hodgson Brothers Company should not suffer therefor. The fact that Harris Brothers Grain Company would have no legal claim to the part of the proceeds of the sale of the oats which was awarded Hodgson Brothers Company but emphasizes what is said at the beginning of this statement,—that the judgment of the court in this case is right.

*Judgment adhered to. Broyles, P. J., and Harwell, J., concur.*