STREET, Respondent, v. FARMERS' ELEVATOR COMPANY OF ELKTON, Appellant.

(146 N. W. 1077.)

1. **Bailment—Denial of Bailor's Title—Rights of Paramount Owner—Defenses By Bailee—Surrender to Paramount Owner.**

    While at common law a bailee could not assert title to bailed property to be in himself or a third person, yet, at common law, one owning and entitled to possession of personalty might enforce his possessory right against any person; therefore, held, that, while a bailee can only discharge his liability by returning the identical property received, or its proceeds, under the terms of the bailment, he may show it was taken from him by process of law, or by one having paramount title who made demand therefor; but such paramount claim of possession, and the bailee's yielding thereto, is necessary as a defense to the previous tortious possession of the bailor as between the latter and such paramount owner.

2. **Warehousemen—Bailor's Ownership of Property—Estoppel to Deny—True Owner's Rights.**

    Under Public Warehouse Act. Pol. Code, Sec. 487, requiring warehousemen and elevator operators to give the person delivering grain thereat a warehouse receipt, "subject to the owner or consignee," Sec. 488, requiring the grain, or an equal quantity, to be delivered to receiptee upon return of receipt with tender of charges, Sec. 494, making the delivery of grain and issuance of receipt a bailment, and not a sale of the grain, and providing that the stored grain shall not be liable to judicial seizure in actions against bailee, "except actions by owners or holders of such warehouse receipts to enforce" the same, Sec. 495, prohibiting warehousemen from denying that such grain is not the property of the receiptee or his assigns, and making the receipt, as to obligations of bailee, conclusive evidence of ownership in receiptee, and of his right to receive the grain, and Sec. 46, making it larceny for a warehouseman to wilfully refuse to deliver the grain on demand, held, that the warehouseman is estopped, as to such receiptee or his assigns, from voluntarily questioning his ownership of the grain, though the true owner, if other than such receiptee, could maintain an action to recover against the warehouseman. McCoy, J., and Smith, P. J., dissenting.

**3.** **Constitutional Law—Judicial Functions—Wisdom, or Principle, of Statute.**

Unless deemed unconstitutional, the Supreme Court is bound to sustain a statute, though deemed opposed to reason and every principle of right and justice.

**4.** **Estoppel—Estoppel by Conduct Against ' Estoppel by Deed—Effect.**

An estoppel by deed may be prevented by the existence of an estoppel in pais; and under an estoppel against an estoppel, the matter is set at large.

**5.** **Estoppel by Conduct—Misrepresentation—Injury by Acting Thereon.**

To constitute an estoppel by false representations, not only must there be false representation or concealment of the facts, with knowledge thereof by the person estopped, the other party not having the means of such knowledge, but the misrepresentation must have been made with intention that it should be acted upon, and the other party must have acted thereon to his injury.

**6.** **Warehousemen—Right to Deposit—Deposit by Co-tenant—Misrepresentations—Agency For Co-owners.**

One owning an undivided interest in grain, as a cotenant, and having possession thereof, could, in absence of a prior demand by his co-tenants for their aliquot shares thereof, deposit with a warehouseman all of the grain in his own name, and hence was not guilty of misrepresentation to the warehouseman in stating that he owned part of the grain and was agent for the owners of the remainder. McCoy, J., Smith, P. J., dissenting.

**7.** **Warehousemen—Ownership—Estoppel Under Public Warehouse Act.**

Under Public Warehouse Act, Pol. Code, Sec. 495, prohibiting a warehouseman who has issued a receipt for storage of grain from denying that the grain is the property of the receiptee, held, that a warehouseman could not plead, or prove, that the depositor was only a tenant in common, and did not own all of the grain. McCoy, J., and Smith, P. J., dissenting.

**8.** **Bailment—Delivery—Disagreement By Co-Owners—Rights of Depositary.**

To bring a case within Civ Code, Sec. 1363, providing that if a thing deposited is owned jointly or in common by persons who cannot agree on manner of its delivery, the depositary may deliver to each his proper share thereof, the fact of such disagreement would have to be shown; and held, that an answer failing to set up such disagreement does not state a good defense to an action by a bailor for conversion of

grain deposited by him with defendant warehouseman.     McCoy, J., and Smith, P. J., dissenting.

**9.  Reformation of Instrument—Warehouse Receipt—Immateriality of Change of Instrument.**

A warehouse grain receipt can only be reformed, as regards the owner of the grain, by showing the true facts concerning ownership, as, where such is the case, that the grain was received from depositor as cotenant in possession and held for all the tenants; and held, that such a change in this case would not avail the defendant warehouseman against plaintiff's suit for conversion of grain which had been delivered by defendant to a third party as the true owner.

(Opinion filed April 27, 1914.   Rehearing pending.)

Appeal from Circuit Court, Brookings County.   Hon. CHAS. X. SEWARD, Judge.

Action by Andrew R. Street against the Farmers' Elevator Company of Elkton, for conversion of grain.   From an order sustaining a demurrer to the answer, defendant appeals.   Affirmed.

*Cheever & Cheever, C. O. Trygstad,* and *Cuckow & Berke,* for Appellant.

The correct interpretation of secs. 487, 494, 496, Pol. Code, is that the receipt shall be conclusive, only, when in the hands of an innocent purchaser or where there has been no demand by or surrender to a title paramount.   But we have other statutes which authorize the defendant to act in this case, exactly as it has acted.   Sections 1358-1361, 1363 Civil Code.

The defendant did not deliver the grain in dispute, to the plaintiff, because it had been forbidden and prevented from doing so, by the real owner thereof.

This court has passed on Section 495 Political Code; Fletcher v. Great Western Elevator Co., 82 N. W. 184, 12 S. D. 643; Citizen's National Bank v. Great Western Elevator Co. 82 N. W. 186.

While at common law the general rule was, the bailee could not dispute ownership of bailor.   Edwards, on Bailments, 305-6; Lawson, on Bailments, 38, 5 Cyc. 172—yet there is a well defined exception to that rule, as follows:   He may show that he has yielded to a title paramount to that of bailor, when possession has been demanded of him by the person holding the paramount title.   5 Cyc. 173; Fisher v. Bartelt, 8 Me. 122, 22 Am. decisions

225; Crosswell v. Lehman, 54 Ala. 363, 25 Am. dec. 684; Hayden v. Davis, 9 Cal. 573; Gray v. Allen, 14 Ohio, 58, 45 Am. Dec. 522; Bates v. Stanton, N. Y. Supt. Ct. 79; Hentz v. Steamship Idaho, 93 U. S. 575; Jenson v. Eagle Ore Co., 47 Colo. 306, 19 Am. & Eng. Annotated cases 519; Wetherly v. Straus, 28 Pac 1045, (Cal.) Palmtag v. Doutrick, 59 Cal. 154; Bibbele v. Bond, 34 L. J. (N. S.) Q. B. 137; King v. Richards, 6 Whatt. 418.

A demand by the true owner upon the bailee is sufficient. Hayden v. Davis, supra; King v. Richards, supra; Story on Bailments, 582; Hentz v. Steamship Idaho, supra; Story on Bailments 582; Hentz v. Steamship Idaho 93 U. S. 575. No estoppel can be based upon an instrument obtained by fraud. 16 Cyc. 708; 11 Am. & Eng. Enc. of Law, 2nd ed. 394; King v. Richards, 6 Whart. 418; Thompson v. Williams 1 Pac. 47 (Kans.); Rynear v. Nelind, 3 Greene, 310 (Ia.); McCrea v. Pumort, 16 Wend. 460; McMichael v. Webster 35 Atl. 663 (N. J.); Gould v. West, 32 Texas 338; Hayden v. Davis, supra; Hentz v. Steamship Idaho, supra; Dunn v. National Bank, 90 N. W. 1045 (S. D.); 16 Cyc. 708.

Defendant is entitled to have this receipt reformed. Section 127, Code of Civil Procedure; 24 Am. & Eng. Enc. of Law 2nd Ed. 652; Forest v. Van Auken, 96 N. W. 301 (N. D.) McCormick Harvester Co., v. S. Waulp 76 N. W. 939 (S. D.)

*Hall, Alexander & Purdy,* for Respondent.

The facts averred in the answer were insufficient to constitute a defense to plaintiff's claim for damages based upon the conversion of the grain, and the demurrers thereto were properly sustained.

The rights and liabilities of the parties are governed exclusively by the provisions of Sections 480 to 504, Political Code. The legislative intent was, to substitute the possession of the receipt for the actual possession of the grain deposited, and to invest the holder of the receipt with all the rights which would pertain to the actual possession of the grain. The duty of the warehouseman is to hold the grain deposited, or an equal quantity of similar grain, until the presentation of the receipt by the legal holder thereof, and then to make delivery to such holder, cancelling the receipt. These enactments are intended to relieve the warehouseman altogether of any obligation to determine ques-

tions of title between the depositor and third parties. Citizens National Bank v. Great Western Elevator Co. (S. D.) 82 N. W. 186; 40 Cyc. 447; Cochran v. Ripy, 13 Bush (Ky.) 495; Mathe v. New Orleans Sugar Shed Co., 32 La. 631; Velsian v. Lewis, 15 Ore. 539, 3 Am. St. Rep. 184; Wheeler v. Brookfield (N. J) 58 Atl. 352.

The defendant's delivery of one-fourth of the grain in question to Roy Street, Eva Street Cass, and Mary Reed, was wholly voluntary on its part, and in violation not only of contractual obligations, but also of penal statutes, and can therefore constitute no valid defense to the cause of action alleged in the complaint.

Appellant's construction of the statute is not tenable. Fletcher v. Great Western Elevator Co., (S. D.) 82 N. W. 184. Anderson v. Farmers Co-Operative Shipping & Elevator Co., (S. D.) 136 N. W. 1123; (8 Cyc. 123.)

The claim made by defendant's counsel to the effect that the provisions of the warehouse law as applied to the case at bar, are subject to the provisions of Sections 1358-1363 of the Civil Code, relating to deposits, and inoperative so far as they conflict with those provisions, is untenable. 36 Cyc. 1151; Jones v. Broadway Roller Rink Co., 118 N. W. 170 (Wis.)

It was competent for the legislature in passing the act in question, to declare its meaning and construction, and such declaration is binding upon the courts. 2 Sutherland on Statutory Construction, Sec. 58, Page 684. The misrepresentation charged in the answer, was not material under any view which could be taken, either of the law or the facts.

The general rule is, each co-tenant is equally entitled to possession of personal property, and one in actual possession thereof has the right to maintain such possession against his co-tenants. 38 Cyc. 18; 17 Ency. of Law, Second Ed. 670; Southworth v. Smith, 71 Am. Dec. 72, 27 Conn. 355; Tallman v. Barnes, 11 N. W. 478 (Wis.); Thompson v. Silverthorn, 115 Am. St. Rep. 727 N. C.); Robinson v. Dickey, 52 Am. St. Rep. 417, 143 Ind. 205; Williamson v. Moore, 80 Pac. 227 (Idaho.)

A false statement to be actionable must be attended, or followed, by injury. Sonnesyn v. Akin, 104 N. W. 1026 (N. D.)

In order to justify a bailee in a refusal to deliver the property to the bailor, he was obliged to show a superior right of pos-

session in a third person. ('Wheeler v. Brookfield, supra.) The bailee may not, for his own benefit, deny the title of the bailor, or avail himself of the title of a third person, although that person be the true owner, nor may he do so in any case where he has not yielded to any paramount title in another. 5 Cyc. 172.

The defendant, even at common law, was estopped from setting up a title to the subject of the bailment which he had purchased from a third party against his bailor.

WHITING, J. The complaint herein alleged that defendant is a corporation duly licensed to engage in and engaged in the business of storing grain pursuant to the laws of this state in relation to public warehouses; that plaintiff, being the owner of certain grain, deposited it with the defendant and received from it storage receipts in the form provided by section 487 of the Political Code; that afterwards plaintiff presented such receipts to the defendant, offered to pay all storage charges upon the grain deposited, and demanded the delivery of said grain; that defendant refused to deliver any of said grain, or any grain of equal grade, and refused to honor such receipts and has kept all of said grain and converted the same to its own use; that plaintiff has sustained damages in the amount of the value of said grain as therein stated. Defendant admitted that it is a corporation licensed to receive and store grain under the statutes of this state, and that it did receive grain from plantiff and issue to him the storage receipts described in the complaint. By way of defense, it alleged in substance as follows: First, that plaintiff was not the owner of, nor in any manner the agent or representative of the owners of an undivided one-fourth interest in and to the said grain; that, upon demand of the owners of such one-fourth interest, it had, prior to plaintiff's demand therefor, delivered to them one-fourth of such grain; that it had offered to, and was ready and willing to deliver to plaintiff the remaining three-fourths. Second, that it delivered the storage tickets under the following conditions, to-wit: at the time plaintiff deposited the grain he represented that he was the owner of part of said grain and agent for the owners of the remainder, and falsely and fraudulently demanded that the storage receipts be made in the name of plaintiff; that the said representation was knowingly false and fraudulent as to an undivided one-fourth of said grain; that, through such false repre-

sentation and the mistake on the part of defendant in believing the same to be true and in relying thereon, defendant was induced, upon plaintiff's demand, to issue the storage receipts in his name; that such false representation and demand were made for the purpose of defrauding defendant; that in truth plaintiff and certain other parties, including the parties to whom the one-fourth of the grain was delivered, were co-tenants of certain land and the grain in question was a part of the landlord's share of the crops grown on such land and owned by the owners of said land in the same proportion as the land was owned. Third, and by way of counterclaim,—that the receipts were issued owing to the mistake of defendant as to the facts, which mistake was brought about through the misrepresentations of plaintiff above referred to, wherefore defendant prayed for a reformation of such receipts by substituting, in the place of the number of bushels of grain described in such receipts, the three-fourths thereof. To such answer plaintiff demurred upon the ground that the same did not state facts sufficient to constitute either a defense or counterclaim. The demurrer was in all things sustained. From the order sustaining such demurrer this appeal is taken.

It is the contention of appellant that the provisions of Art. 2, Chap. 1, under the title Deposit, being §§ 1358-1363 Civ. Code, relate to the bailment before us in this case and are not affected by the provisions of chapter 8 Pol. Code, known as the Public Warehouse Act; appellant further contends that, under such general law, a bailee has the right, whenever demand for the possession of the thing deposited is made by its true owner, to deliver the thing deposited to such true owner, and that such delivery will constitute an absolute defense against any right of recovery upon the part of the party making the deposit. Respondent concedes that the above is the ordinary rule governing deposits and the rule under the general statute above referred to, but contends that this rule, so far as it relates to a bailment such as the one under consideration in this case, has been changed by the express provisions of the Public Warehouse Act—it being the contention of respondent that, under such statute, the bailee must, upon presentation of the ticket, deliver to the holder or owner of said ticket the grain represented thereby, and deliver such grain regardless of whether the person who deposited the grain was the

true owner thereof or not; that the bailee cannot surrender the possession of such grain to the true owner and then set up title in the true owner and the fact of such delivery as a defense to the recovery of such grain by the party holding the storage ticket.

[1] It was a fundamental rule of the common law that, inasmuch as the bailee derived his right of possession from the bailor, he could neither assert title in himself nor in a third person—that his position was similar to that of a lessee who was forbidden to deny or dispute the title of his lessor; and it was also a fundamental rule of the common law that one who owned and was entitled to the possession of personal property might enforce his right of possession as against any person. Thus, if one, not the owner of personal property, deposited it with a bailee, the true owner could demand possession thereof, and if possession was not given him, he could maintain an action for the property or its value; and, when demand was made by the true owner, the bailee could not dispute his bailor's title and right of possession, and, at the same time, was in danger of being mulcted in damages by the true owner; he was thus placed in an unconscionable position. As a consequence there has gradually arisen recognized exceptions to the rule that a bailee cannot dispute the title of his bailor. The rule with those exceptions thereto which have been established by the great weight of authority is thus stated: "The general rule is that the bailee can discharge his liability to the bailor only by returning the identical thing which he has received, or its proceeds, under the terms of the bailment; but to this rule there are certain exceptions. The bailee may show that the property has been taken from him by process of law, or by a person having a paramount title, or perhaps excuse his default in some other way. But he cannot set up jus tertii against his bailor, however tortuous the possession of the latter, unless the true owner has claimed the property and the bailee has yielded to the claim." Jensen v. Eagle Ore Co., 47 Col. 306, 107 Pac. 259, 33 L. R. A. (N. S.) 681; 19 Ann. Cases, 519.

[2] Has the Public Warehouse Act prescribed another rule so that a bailee under such act cannot voluntarily surrender the bailed property to the true owner thereof, and then interpose the fact of such surrender as a defense to a claim by the bailor?

Recognizing the importance, in an agricultural state such as this, of the establishment of public warehouses where the producers' grain can be stored and held subject to future demand,— and at the same time realizing the necessity of allowing the warehouseman to commingle and even to ship to market the grain so deposited—which commingling and shipping would, at common law, have constituted a conversion by a bailee,—the Legislature enacted the Public Warehouse Act, which, after providing for the licensing of the business of conducting a public warehouse and for the giving of a bond by the warehouseman, provides among other things as follows:

"§ 487. All owners of such bonded warehouses and elevators so licensed shall upon the request of any person delivering grain at such warehouse give a warehouse receipt therefor, subject to the owner or consignee, * * *

"§ 488. On the return of any warehouse receipt properly endorsed and the tender of all proper charges upon the property represented by it, such grain, or an equal quality [quantity] of the same grade, and kind, shall be immediately delivered to the holder of such receipt as rapidly as due diligence, care and prudence will justify. * * *

"§ 494. Whenever any grain shall be delivered to any person, association, firm or corporation doing a grain warehouse or grain elevator business in this state, and receipts issued therefor, providing for a delivery of a like kind, amount and grade, to the holder thereof in return, such delivery shall be a bailment and not a sale of the grain so delivered; and in no case shall the grain so stored be liable to seizure upon process of any court in actions against such bailee, except actions by owners or holders of such warehouse receipts to enforce the terms of the same; but such grain shall at any and all times, in the event of the failure or insolvency of such bailee, be first applied exclusively to the redemption of outstanding warehouse receipts for grain so stored with such bailee. * * *

"§ 495. No person, association, firm or corporation, doing a grain warehouse or grain elevator business in this state, having issued a receipt for the storage of grain, as in this article provided, shall thereafter be permitted to deny that the grain represented

thereby is the property of the person to whom such receipt was issued, or his assigns thereof, and such receipts shall be deemed and held, so far as the duties, liabilities and obligations of such bailee are concerned, conclusive evidence of the fact that the party to whom the same was issued, or his assigns thereof, is the owner of such grain and is the person entitled to make surrender of such receipt and receive the grain thereby promised to be delivered.

"§ 496. Every person and every member of any association, firm or corporation doing a grain warehouse or grain elevator business in this state who shall after demand, tender and offer as provided in section 488 wilfully neglect or refuse to deliver, as provided by said section, to the person making such demand, the full amount of grain of the kind and grade or market value thereof which such person is entitled to demand of such bailee, shall be deemed guilty of larceny and shall on conviction thereof be punished by a fine or imprisonment, or both, as is prescribed by law for the punishment of larceny."

It is urged by appellant that the words, "subject to the owner or consignee," contained in section 487, supra, have the effect of preserving to the *true owner* all the rights he would have under the general law, it being contended that the word "owner," as contained in such phrase, refers to the true owner of the grain. We do not think this section was enacted for the purpose of safeguarding, or that it in any way relates to, the rights of any person other than the party named in the receipt; section 487 prescribes the contents of the receipt to be given by the bailee; it is to be given in favor of somebody; there must be someone named therein who shall be recognized as the party entitled to the grain therein described. The effect of the use of these words in section 487 is to require that the receipt shall name, as the bailor, the person who is represented, at the time of the deposit, to be the *owner* of such grain, or the person to whom the depositor announces the grain is *consigned*. When a depositor goes to a warehouseman and seeks to deposit grain, the warehouseman asks him to whose order he wishes the grain to be "subject"; the depositor can give either the name of the one whom he claims to be the owner of the grain, or the name of the one to whom he desires to consign the grain. The clear intent of the use of the words "owner" and "consignee" is to provide that the receipt shall name therein the person *to*

*whose order* the grain shall be "subject"—the person who can negotiate the receipt.  If such was not the purpose and effect of incorporating these words into such section, then there is no provision in this law under which a warehouseman is required to insert in such receipt the name of any person.  That he must insert either the name of the pretended owner or the name of the person to whom the depositor desires to consign the grain; and that, after having so inserted such name and received the grain *subject* to the order of the person named, he is estopped, as to such person or his assignee, from questioning his ownership of the grain, seems clearly the effect of the several sections of this law.

Respondent contends that the effect of section 494 is to take away from the true owner, if not the holder of the storage receipt, the right to bring an action against the bailee to recover such grain; and he further contends that, when the bailee is thus relieved from liability to suit, the reason for that rule of common law which allows a bailee to surrender possession to the true owner and then interpose the fact of such surrender as a defense in an action by the bailor, ceases to exist, and such bailee cannot thus surrender possession and defend against the holder of the receipt.  Appellant contends that the sole purpose of this section and the only effect thereof, is to render a deposit of grain under this act a bailment; it contends that the word "owners" as used in said section 494 refers to the true owner of the grain and not necessarily to the owner of the reecipt, and that the latter part thereof but declares the established rules of the common law, and leaves the owner's right of suit the same as at common law.  While it is clear that the main purpose in the legislative mind when enacting this section was to declare a deposit under this Act a bailment, yet it is equally clear that the word "owners" as used in section 494 refers to and is limited by the phrase, "of such warehouse receipts."  The contention of the respondent to the effect that the true owner of grain can not bring an action therefor against the bailee, where the bailor was other than such true owner, seems to be based on that part of section 494 reading: "and in no case shall the grain so stored be liable to seizure upon process of any court in actions against such bailee * * *;" but the clear purport of this clause is to emphasize the fact that the transaction of storing grain under the act shall be treated as a bailment and

as in no manner vesting title to the grain in the bailee—this section does not, and it was never intended that it should deprive a true owner of his common law right to pursue his grain in whomsoever's hands he may find it.

Though a receipt, given without the knowledge or consent of the true owner to one having no right to deposit the grain therein described, can in no manner affect the right of the true owner to recover such grain, it does not necessarily follow that such a receipt cannot be, in all respects, valid and binding as between the bailor and bailee, and estop the bailee from voluntarily surrendering the possession of the grain to the true owner and then setting up such surrender to and title in the true owner as a defense to an action brought by the receipt holder. Section 495 does not contain any exceptions under which the estoppel therein declared shall not apply; but, under this section, the warehouseman, after giving the receipt, is thereafter estopped "to deny that the grain represented thereby is the property of the person to whom such receipt was issued, or his assigns thereof"; moreover, without providing for any exception to the rule therein announced, said section provides that such receipt "shall be deemed and held, so far as the duties, liabilities and obligatons of such bailee are concerned, conclusive evidence of the fact that the party to whom the same was issued, or his assigns thereof, is the owner of such grain." The clear purpose in enacting this section was to forbid a bailee assuming, as between the party claiming under the receipt and a third party, to determine which is the rightful claimant of the property.

The dissenting opinion herein will be found to contain a most exhaustive review of the decisions bearing upon the right of a bailee to surrender, to the true owner, the thing bailed; and these decisions establish beyond question the fact—which all parties hereto fully concede—that the rule of law, supported by the great weight of authority, is that announced in the excerpt, hereinbefore contained, from the decision in Jensen v. Eagle Ore Co. The discussions found in the decisions reviewed by the minority of this court cannot but convince one of the wisdom and justice of the established rule, and it might have served a good purpose if the reasoning in some of these decisions had been called to the attention of the legislative branch of our state government, at the

time it was considering the enactment of the Act before us. But the question for our consideration is not the wisdom of enacting a statute prescribing the rule that a bailee of grain shall not be permitted to deny the ownership of the bailor therein, and omitting therefrom those exceptions to such rule which had become engrafted thereon by the courts. If sections 495 and 496 had been omitted from such statute, then the general statutes relating to bailments and the rule announced in Jensen v. Eagle Ore Co. would control. The real question confronting us is our right to read into section 495 these exceptions to the rule therein announced. Upon this question, the only question really before us, not a single authority cited by appellant or by our colleagues has any bearing—not even the opinion in Daniels v. Palmer, 41 Minn. 116, 42 N. W. 855, as clearly appears from a reading of the whole opinion. Nothing is to be gained from the citation of or the quotation from the opinions of even the most renowned law writers or the most eminent jurists, when it is clear that such opinions are in no manner controlled by statutory provisions such as those we are called upon to construe.

[3] Unless we deem it unconstitutional, we are bound to sustain a statute though we may deem it opposed to a reason and to every principle of right and justice; though no text writer or judicial authority has ever announced a rule of law agreeing therewith or advocating its adoption. There are, however, decisions wherein the right of the bailee to voluntarily surrender possession to the true owner, not the bailor, is denied and this even in states where there are no statutes forbidding such surrender; moreover the right to enact statutes so providing cannot be disputed. We find in New Jersey a statute denying the right of a bailee to voluntarily surrender the property to one not the owner or holder of the receipt, and prescribing that he can only defend against the holder of the receipt when the property has been taken from him by operation of law. Wheeler v. Brookfield, 70 N. J. Law, 703, 58 Atl. 352.

Section 495 forbids the bailee "to deny that the grain represented thereby is the property of the person to whom such receipt was issued, or his assigns thereof." What clearer denial of the bailor's title could there be than for the bailee to voluntarily surrender possession to one claiming adversely to such

bailor? It seems to us most illogical to contend, as do our colleagues, that "The same transaction (accounting to the true owner) which terminated the bailment, also, at the same time, freed appellant from the 'conclusive' effect of the warehouse statute by extinguishing the obligation." Can it be possible that the law permits one to voluntarily violate one provision of a statute, and then be supported in his claim that, by violating such statute, he has terminated the relation that such statute created and become released from the provisions of such violated statute? If section 495 contained an exception under which a bailee might surrender possession to the true owner of the grain, then such a surrender would terminate the bailment and the provisions of such section relating to rules of evidence would cease to apply to that particular transaction. We do not hold that section 495 was enacted for the purpose of "preventing a warehouseman from being placed in an 'unconscionable' position with relation to adverse claimants to stored grain," and we deny that the effect of our views would be to "sanction, in some cases, a double recovery." Section 495 puts the warehouseman in a worse position than he would be in without it, as he is denied a right which he otherwise would have as bailee—the right to voluntarily surrender possession to the true owner. The bailee is in no danger of suffering through "a double recovery," for the simple reason that, in case a demand is made for the possession of the property by one claiming to be the true owner, he can do any one of three things, either one of which will protect him from double recovery: (1) He can allow the claimant to bring suit, defend the same, and, if judgment goes against him and the property is taken from him, plead such involuntary surrender of possession as a termination of the bailment; (2) He can allow the claimant to bring suit, and then, under section 97, C. C. P., apply to the court and ask that the bailor be required to interplead, and he be released from liability in the suit; (3) As soon as demand is made by the claimant, he can proceed under section 98, C. C. P., and be allowed to deposit the property in court.

[4-5] But appellant contends that, admitting a bailee would ordinarily be estopped from pleading and proving delivery to and ownership in the third party, it is not so estopped because one can never be estopped by the contents of a writing obtained by fraud,

and it contends that the receipt in question was procured through fraud. It must be conceded that an estoppel by deed may be prevented by the existence of an estoppel in pais, and that "Where an estoppel exists against an estoppel, the matter is set at large." 16 Cyc. 748. Is respondent estopped by his misrepresentations? It is fundamental that the following elements must exist in order for there to be an estoppel resulting from misrepresentations: (1) The false representation or concealment of material facts. (2) Knowledge, actual or constructive, on part of the party estopped. (3) Lack of knowledge or means of knowledge on the part of the party claiming the estoppel. (4) The misrepresentation must have been made with the intention that it should be acted upon. (5) The party to whom the representation was made must have relied or acted upon it to his injury; that is, he must have suffered a loss of a substantial character, or have been induced to alter his position for the worse in some respect. 16 Cyc. 726-744. There can be no estoppel if either of these elements are wanting—they are each of equal importance. If it were conceded that the answer shows the existence of the first four elements, certainly the facts alleged do not establish the existence of the last element. It must be borne in mind that the answer reveals this grain to have been the landlords' share of grain raised upon land owned by several co-tenants, of whom respondent was one and the parties to whom appellant surrendered one-fourth of the grain were others. Each co-tenant's interest in the grain so raised was, under the provisions of section 201, C. C., an interest in common. At the time of the delivery of this grain to appellant, respondent was in the actual possession of the same, and, so far as appears from the answer, such possession, as to all of the grain, was rightful—it not appearing that any demand had been made by his co-tenants for their aliquot shares of the grain.

[6] Respondent contends that there was no fraud such as would estop him from relying upon the estoppel otherwise resulting from the giving of the receipt, because, under the facts pleaded in appellant's answer, respondent was rightfully in possession of said grain and had the right to deposit all of same; and, this being true, that it necessarily follows that appellant was not "induced to alter his position for the worse," by the alleged false representation. Suppose respondent had been

in fact the sole owner of this grain, and yet had gone to appellant to deposit it and had, either through ignorance of his title to all of said grain or through wilfullness, represented that he was the owner of but a part thereof and agent for the owner of the remainder, and then appellant had issued to him a ticket in which he was named as the owner of said grain; could appellant claim the ticket was procured by fraud and escape the estoppel that would otherwise result from the giving of the ticket? Certainly not, for the perfectly clear reason, that it would have been in no manner injured by such misrepresentation. The case above supposed is no different in effect from the one presented by the facts pleaded. At the time this grain was delivered to appellant, respondent was the owner of an undivided interest in each and every bushel thereof; there had been no demand for possession of their shares by his co-tenants, hence respondent's possession was rightful as to every bushel of such grain. It follows that he had at that time, as the rightful custodian of said grain upon whom rested the duty to care for and preserve the same, the absolute right to deposit all of said grain *in his own name,* a right which, as a mere agent for the owners of a part thereof, he might not have had at all. As hereinafter shown, in discussing the right of appellant to a reformation of the contract, if the receipt had shown that respondent deposited the grain claiming same as co-owner in possession, appellant's rights would be no different than they are under the receipt given. We are not called upon to determine whether, if respondent, after refusing to deliver to his co-tenants their shares of said grain, had represented that he had a right to deposit it all in his own name, such representation would have been a fraud sufficient to work an estoppel against the estoppel arising from the giving of the receipt. The misrepresentation pleaded did not amount to a legal fraud, and appellant remained estopped by the receipt issued.

[7-8] Appellant contends that Sec. 1363, C. C. expressly authorized it to do what it did. This section reads: "If a thing deposited is jointly owned or in common by persons who cannot agree upon the manner of its delivery, the depositary may deliver to each his proper share thereof, if it can be done without injury to the thing." There are several reasons why this section can have no application to the case presented. It would first have to be

pleaded and proven that the bailor was but a tenant in common, and the receipt before us being one given under the Public Warehouse Act, appellant is forbidden either to plead or prove such fact.    But, even if it were a bailment not under such Act, the pleading would have to set forth the existence of those facts which would authorize such division, namely,—that the owners in common could not agree upon the manner of the delivery of the grain.    If the receipt had named the several co-tenants as co-owners of the grain, and there had been an allegation setting up the conditions named in the statute, the pleading would have then set up a good defense.

[9] Was appellant entitled to a reformation of the storage receipt?    The only reformation to which he could claim a right, would be one which would conform such receipt to the true facts. It follows that the only reformation he could ask would be that such receipt should recite the reception of the grain from respondent claiming same as a co-tenant in possession and holding such possession on behalf of all the co-tenants.    If the receipt so read, appellant could not, under all the facts pleaded, rightfully have surrendered the grain to any one but respondent.

The order sustaining the demurrer is affirmed.

McCOY, J. (dissenting).    I am unable to concur in the majority opinion because it seems to me that it is in violation of many fundamental rules and principles of law and equity and against good conscience and gives an unholy and dishonest effect to a special statute never intended by the makers thereof.    The majority opinion admits that a true owner of grain, stored under the warehouse act, may recover from the warehouseman, the bailee, the stored grain, on the ground that the true owner of property may pursue and recover the same in whosesoever hands he may find it; but denies that the warehouseman, who has voluntarily delivered the stored grain to a true owner can avail himself of that fact as a defense when sued in conversion by the bailor.    It is impossible for me to come to the view that the Legislature, by the enactment of those portions of the public warehouse act, set out in the majority opinion, ever intended that a tenant could, under the sanction of said law, deliver to a warehouseman, along with his own, the landlord's share of the grain, and could, by the taking of a warehouse receipt for the whole, including the land-

lord's share, in his own name, deprive such landlord of the legal right to demand and recover from such warehouseman his share of such grain, and that it would not be a good defense for the warehouseman, when sued in conversion by the tenant bailor, that he had so delivered or accounted to the landlord. In taking the position that the true owner may pursue and recover his property and at the same time denying the warehouseman the defense of having attorned and accounted to the true owner of the paramount title, when sued in conversion by the bailor, it seems to me that my associates have taken the anomalous and unholy position of compelling the warehouseman to twice pay for the same grain. If there is an affirmance of the order and judgment appealed from that is precisely what takes place in this case. The appellant has accounted to and paid the true owner of the paramount title, and now is again to be required to pay the respondent, who is a wrongdoer without title. It appears to be the view of the majority opinion that the purpose of the enactment of the warehouse law was to prevent the warehouseman from being placed in the "unconscionable" position of being mulcted in damages by adverse claimants to the stored grain. If this really was one of the objects and purposes of the law the Legislature most certainly shot wide of the mark when they fixed it so a double recovery might be had against the warehouseman for the same grain. And it is just as illogical and unreasonable to hold that when the warehouseman has accounted and attorned to the rightful owner of the paramount title he cannot avail himself of that fact as a defense when sued by the bailor without right or title, who has wrongfully and fraudulently procured a storage receipt to be taken in his own name instead of the name of the true owner. The answer, to which the demurrer was sustained, in substance, alleged that the true owner of the one-fourth share of said grain demanded the same of appellant, and that he paid and accounted to said true owner therefor; that respondent wrongfully and fraudulently procured the storage receipt for such share to be issued in his own name. For the purposes of this decision the allegations of this answer stand admitted.

Whatever may have been the purpose of the enactment of this warehouse statute it must be conceded that it is a special law designed to assist certain legitimate commerce. In this country

it has long been an open debatable question whether such warehouse transactions constituted a sale or bailment,—whether the general law of sales or the general law of bailments was applicable. Some courts of last resort held one way, some another. I am of the view that the main objects sought to be accomplished by this enactment was the establishment of the bailment rule, without any intent to change or alter in any manner the general law of bailment, or without any intent to change or alter the general laws as to legal rights and remedies; or to change any other general law of the state. This seems to be the view taken by all courts that have directly passed upon the nature and effect of such statutes. After careful search I have found *none* to the contrary. It is apparent that the warehouse act of this state was largely copied from a similar act of the state of Minnesota. Gen'l Stat., 1878, p. 1012. In Daniels v. Palmer, 41 Minn. 116, 42 N. W. 855, the Supreme Court of that state, in passing upon the nature and scope of such statutes, said:

"Unless otherwise provided in plain terms its several sections must be considered in connection with other statutes. By this law the relation of the parties to a transaction of this character are radically changed (from sale to bailment), and with these new rights are furnished new remedies. But no sound reason can be advanced for holding that because the willful neglect or refusal before mentioned (to deliver the grain to the holder of the storage receipt) is declared a crime, or because relief is granted by statute which may result in the appropriation of the grain which has been deposited by one bailor to satisfy the claim of another, either or both of these persons are deprived of such other rights and remedies as previously existed at common law or by statute in case of the misappropriation or unlawful conversion of personal property. The remedies specially created by the grain and warehouse law are not exclusive. They were intended to be and are auxiliary to those previously afforded." It is clearly held in this case that the statutory bailment cannot be used as a means of misappropriating property so as to deprive parties in interest of the legal rights theretofore existing by statute or common law. To the same effect is Collins v. Ralli, 20 Hun (N. Y.) 246, affirmed by Court of Appeals, 85 N. Y. 637. In the case of Holton v. Hubbard, 49 La. Ann. 715, 22 So. 338, it was held that the owner was

not precluded from claiming his property where his agent had stored it in a public warehouse and taken the storage receipt in his own name and then had pledged the receipt for his own individual debt. This was a case where the equities were much stronger against the warehouseman than in the case at bar. In that case it was contended that the warehouse act, which made the storage receipt negotiable, and the holder of the receipt the presumptive owner thereof, had repealed the general provisions of the Civil Code making void such acts of an agent bailor. In passing on that question the court, in substance, said, if it could be held that the public warehouse act intended to repeal these articles of the Civil Code it would be open to the objection of unconstitutionality because no such purpose was stated in the title; *with the most careful consideration we are utterly unable to interpret legislative acts designed to assist legitimate commercial necessities so as to overthrow long settled principles and sanction what the law deems fraud.* The South Dakota warehouse act became a law by Chap. 99, Laws of 1890. By consulting the title of that act it is apparent that no legislative intent existed to overthrow, repeal or change the general law of bailments; or to change the general law of agency; or to change the general law as to parties to civil actions, and the assignment of choses in action; or to change the prior existing general law as to legal rights and remedies; or to change the general statutory measure of damage in conversion actions. The majority opinion says that the Legislature, by section 495, established the common law rule that the bailee could not dispute the bailor's title, but did not include the exceptions to the rule, and therefore the exceptions cannot be considered because they are not mentioned in the act. From the fact that the exceptions are not mentioned we of the minority opinion under the rules for construing such statutes draw a directly opposite conclusion. We are of the view that the Legislature did not undertake in any manner whatever to legislate upon the subject of the exceptions to the rule, but left the law as to the exceptions as it formally existed. It must be kept in mind that the warehouse act in question undertook to specifically legislate upon a subject thereto previously regulated by general statute and common law rules. The rules of construction of statutes creating original laws are not applicable. The general rule for the con-

struction of such special statutes seems to be that no part of the previously existing general law will be interfered with or changed by the special act, excepting such changes as are expressly or necessarily implied by the act itself.   36 Cyc. 1144-1145; Collins' v. Ralli, 20 Hun 246, S. C. 85 N. Y. 637; Bank v. Hurt, 99 Ala. 130, 12 So. 568, 19 L. R. A. 701, 42 Amer. St. Rep. 38 Cumberland Tel. Co. v. Kelly, 87 C. C. A. 268, 160 Fed. 316, 15 Ann. Cas. 1210. Where a statute is in effect an affirmance of a rule of the common law it is to be interpreted in accordance with the construction placed upon the common law, unless the contrary expressly appears from the special act. The change expressly sought to be brought about by this warehouse act was to apply the law of bailment to a transaction theretofore, at common law, in many jurisdictions, held to be a sale.   Under this rule of construction the Legislature not having mentioned the subject of the exceptions in the warehouse act, left the exceptions to the rule that a bailee could not dispute the bailor's title as they formerly existed at common law, and also left the act to be construed in conjunction with the previous law.

The plain force and effect of section 495, of the warehouse act, set out in full in the majority opinion, is that the bailee is estopped to dispute the bailor's title, and is estopped to set up title in a third party so far as the duties, liabilities and obligations of the bailee are concerned. That is no more nor less than the common law rule. The common law rule was just as stout and just as conclusive against the bailee as the provisions of this section. Therefore section 495 is declaratory of, and has no more force or effect than the common law rule. As against the bailee setting up title in himself, or in a third person for himself, section 495 conclusively presumes that the bailor has title, but there is clearly no conclusive estoppel, comprehended within this section, other than as against the *bailee* himself. An estoppel to dispute the bailor's title by the bailee does not include and is not applicable to an estoppel against a true owner, or one claiming under. him. Such an estoppel by judicial legislation cannot be read into this section 495. *It must be observed that the appellant bailee by his answer is not claiming title in himself as bailee against the bailor respondent, but is claiming only under the title and authority of the true owner of the paramount title, with which he has properly connected himself.* Now what was the scope and

meaning of the common law rule? It meant simply this, and nothing more, that the bailee cannot set up title in himself; neither can he set up title in a third person for his own individual benefit, ·unless he connects himself with the title of such third person and defends in the shoes and in place of such third person. It is not a good defense for a bailee to merely allege that some third party has paramount title without in any manner connecting himself with the title of such third person; but it is a good defense where the bailee properly connects himself with the paramount title of the true owner and defends under the authority of that title. Williston on Sales, Sec. 421; 5 Cyc. 172, 173; King v. Richards, 6 Whart. (Pa.) 418, 37 Am. Dec. 420; Hale on Bailments, p. 34. The rule that a bailee cannot set up title in a third person has no application where the bailee has surrendered the property to the true owner on demand. The bailee in such case takes the risk and has the burden of showing that the person to whom he surrendered the property was the true owner. Hale on Bailments, p. 34; Gerber v. Monie, 56 Barb. (N. Y.) 652; Biddle v. Bond, 6 Best & S. 225; 122 Eng. Reprint, 1179; Dodge v. Meyer, 61 Cal. 405; Transp. Co. v. Barber, 56 N. Y. 544; King v. Richards, 6 Whart. (Pa.) 418, 37 Am. Dec. 420.

Now, in what ways may the bailee properly connect himself with the paramount title in order to avail himself of the defense? When the property is taken from him by due process of law, or when he has voluntarily delivered the same to the owner of the paramount title, on demand. *Either way is sufficient; one is just as effectual as the other. If section 495 will permit' of one of these ways it will permit also of the other, as there is no distinction in this warehouse act, from beginning to end,* that would give preference to either one or the other of these two general methods of connecting a bailee with the title of a true owner. The majority opinion admits that the true owner might maintain suit to recover the property from the bailee, but denies that he can voluntarily surrender possession on demand of the true owner. What the reason for this distinction is we are not informed by our majority brethren, but, according to the highest judicial authority of this country, it is a distinction without any difference. Hentz v. The Idaho, 93 U. S. 575, 23 L. E. D. 978.

It is not necessary that the bailee wait until judgment has

been rendered against him ousting him from possession by virtue of the paramount title; he may shield himself from such suit by attorning to the paramount title, on demand, without suit. And the position of the bailee is precisely the same whether the bailor was honestly mistaken as to the rights of the true owner, or whether he was acting in fraudulent derogation of them. *The right of the recovery by the true owner against the bailee becomes fixed and has its inception and initiation in the demand, and after the true owner has once demanded the property of the bailee, if the bailee should then deliver the same to the bailor, he would still be liable to the true owner.* Williston on Sales, Sec. 421; Transp. Co. v. Barber, supra; King v. Richards, supra. Hence, the reason that the bailee may shield himself from suit by attorning to the true owner upon his demand. This is all in consonance with the general statute of this state upon bailments. Civil Code, Secs. 1358 to 1362, and Sec. 98 Code Civ. Pr. The following authorities fully sustain this position: Hentz v. The Idaho, 93 U. S. 575, 23 L. Ed. 978; Biddle v. Bond, supra; Transport Co. v. Barber, supra; Hale on Bailments, p. 34; Williston on Sales, Sec. 421; 5 Cyc. 172; Gerber v. Monie, supra; Dodge v. Meyer, 61 Cal. 405. And there are numerous other cases and authorities to the same effect. Hentz v. The Idaho is one of the leading cases in this country upon the proposition here involved. The learned court in that case, in substance, said: "If it be said that by accepting the bailment the bailee has estopped himself against questioning the right of the bailor, it may be remarked in answer, that this is assuming what cannot be conceded. Undoubtedly, the contract raises a strong presumption that the bailor is entitled, but it is not true that thereby the bailee conclusively admits the right of the principal. His contract is to do with the property committed to him what his principal has directed,—to restore it or account for it. And he does account for it when he has yielded it to the claim of one who has right paramount to that of his bailor. If there be any estoppel it ceases when the bailment on which it is founded is determined by what is equivalent to an eviction by title paramount; that is, by the reclamation of possesion by the true owner. Nor can it be maintained as is argued in the present case that a carrier can excuse himself for failure to deliver to the order of the shipper only when the goods have been

taken by legal proceedings, or where the shipper had obtained the goods by fraud from the true owner. It is true that in some of the cases fraud of the shipper has appeared, and it has sometimes been thought it is only in such a case, or in a case where legal proceedings have interfered, that the bailee can set up the *jus tertii*. There is no substantial reason for the opinion. No matter whether the shipper has obtained the possession he gives to the carrier by fraud practiced on the true owner or whether he mistakingly supposes he has rights in the property, his relation to the bailee is the same. He cannot confer rights which he himself does not possess; and if he cannot withhold the possession from the true owner, one claiming under him cannot. The modern and best considered cases treat as a matter of no importance the question how the bailor acquired the possession he has delivered to the bailee, and adjudges that, if the bailee has delivered the property to one who had the right to it as true owner, he may defend himself against any claim of the principal. And so, when the bailee has actually delivered the property to the true owner having a right to the possession, on his demand, it is a sufficient defense against the claim of the bailor." In Biddle v. Bond, the learned court, in substance, said that upon principle there was no difference between cases in which the bailor in the first instance obtained possession of the goods by fraud, force or felony, and in cases in which he was only mistaken as to the rights of the true owner, for the bailor can confer upon his bailee no better title than he has himself. If the true owner demanded the property of the bailee and he refuse to deliver it he is at once liable for its conversion. It would be a hardship if the bailee might shield himself from an action for conversion by delivering the property to the true owner, if he could not show a delivery to the owner as a defense to the groundless claim of the bailor. In Gerber v. Monie, supra, it was held that in actions of replevin or trover by a bailor against a bailee the defendant could not set up title or right in a third person, unless he connected himself with such right or title. In Transp. Co. v. Barber, supra, the Court of Appeals of New York said: "The best considered cases hold that the right of a third person to which the bailee has yielded may be interposed in all cases as a defense to an action brought by the bailor subsequently for the property. When the owner comes and demands his property

he is entitled to its immediate delivery and it is the duty of the possessor to make it.   The law will not adjudge the performance of this duty tortious as against a bailor having no title."   In King v. Richards, 6 Whart, (Pa.) 418, 37 Am. Dec. 420, the learned court said:

"It may be correct enough to hold where the real owner of the property does not appear and assert his right to it, that the bailee shall not be permitted, of his mere motion to set up, as a defense against his bailor, such right for him.  But it would be repugnant to every principle of honesty to say, that after the right owner has demanded the goods of the bailee, the latter shall not be permitted, in an action brought against him by the bailor, to defend against his claim by showing clearly that the plaintiff acquired possession of the goods fraudulently and tortiously or feloniously, without having obtained any right thereto."  There are numerous other authorities holding to the same effect as those from which quotations have been made.  Palmtag v. Doutrick, 59 Cal. 168, 43 Am. Rep. 245; Jensen v. Eagle Ore Co. 47 Col. 306, 107 Pac. 259; 19 Ann. Cases, 519, and note; 33 L. R. A. (N. S.) 681, and note.

It seems to be clear from these authorities that there is in principle, and as a matter of fact, no material or substantial difference between the common law rule in relation to the estoppel of a bailee to deny the bailor's title, and the effect of our warehouse act. It is apparent that whoever drafted said act well knew and understood the common law rules of bailment and endeavored to and did conform thereto.   All the legal rights and remedies of the bailor, bailee and true owner are carefully guarded, and under proper interpretation of this act, there would be no possibility of a double recovery in any case.   By permitting, as the majority opinion does, the true owner to recover and reclaim his property in the hands of the bailee, and at the same time denying the bailee the defense of having thus accounted to the true owner of paramount title, places an "unconscionable" hardship upon the bailee, which is mentioned in Hentz v. The Idaho, Biddle v. Bond, and King v. Richards in no uncertain terms, and which the annotator, 5 Cyc. 173, note 66, terms an *"anomalous" proposition.*

The majority opinion says the bailee is in no danger of suffering through a double recovery for the reason that he can allow the claimant to bring suit, defend the same, and if judgment goes against him and the property be taken from him, plead such involuntary surrender of possession and termination of bailment. In the first place the bailee in the case at bar is right up against a double recovery. In the second place, as we have already shown, there is no law in this state requiring the bailee to wait until judgment is rendered against him, before he can plead as a defense that the property has been taken from him by the true owner. He is not required to go to that trouble and expense. The only case we are able to find that holds to the rule that the bailee must wait until sued by the true owner and been ousted by a judgment before he is entitled to plead such fact as a defense, is the case of Wheeler Co. v. Brookfield, cited in the majority opinion. We fully agree with the opinion in that case as applied to the facts there under consideration. In that case the bailee had surrendered the grain to the holder of the receipt long before the owner appeared and demanded possession. At that time the owner made demand the bailee was not in possession, and in that case the court held that the owner could not maintain conversion against the bailee after a delivery had been made to the receipt holder,— that the law would protect the bailee from having to twice pay for the same grain. As applied to the facts in the case at bar the decision in the New Jersey case is wholly inapplicable; and in that case the court was construing a statute of the state of New Jersey, which in effect provided that the bailee should not deliver the stored grain to a third party unless ousted by suit. There is no such provision in the warehouse act in question nor elsewhere in the laws of this state. Under the logic and effect of the majority opinion where a thief deposited the grain and secured a storage receipt from the warehouse bailee, such bailee could not deliver the same to the true owner until after suit and judgment in favor of such true owner; if the bailee did happen to deliver to the true owner without suit, then the thief might recover as holder of the storage receipt, and such bailee be entirely defenseless, and the thief would therefore have more rights under his storage receipt than he would if he still had possession of the grain. Hurt

v. Bank, 99 Ala. 130, 12 So. 568; 19 L. R. A. 701; 42 Amer. Stat. Rep. 38; Collins v. Ralli, 20 Hun (N. Y.) 246.

There is nothing in the provision of section 494 "and in no case shall grain so stored be liable to seizure upon process of any court in actions against such bailee, except actions by owners or holders of such warehouse receipt" which conflicts with the common law rule. This provision recognizes the distinction between the *owner* and *holder* of such receipt. That the owner may be one person and the holder another. The true owner of the property wrongfully placed in bailment would be the *beneficial owner,* although the receipt was issued in the name of another. If it was intended that none but the *holder* of the receipt could maintain such action then the use of the words *"owner or"* was unnecessary. It will be observed that this provision is a limitation and relates only to who may be plaintiff against the bailee, and that this action is maintained by one of the parties authorized to bring suit against the bailee, and that there is no procedure in this action in violation of or in conflict with the provisions of this section. This section in no manner relates to what defenses the bailee may or may not interpose when sued by the owner or holder of the receipt. It would be unreasonable to suppose that the Legislature intended to authorize the owner or holder of the receipt to maintain suit against the bailee, and then say to the bailee you can have no defense whatsoever against such suit. There is nothing in this section 494, or elsewhere in the act, which, by the wildest stretch of the imagination, can be construed into saying that the bailee cannot voluntarily attorn or account to the true owner, and then set up that fact as a defense against the bailor. We are of the view that the only limitation upon the matter of defense that may be interposed by the bailee in such suit is to be found in section 495. Section 487 of the act, in effect provides that the receipt shall be issued *subject* to the rights of the owner. The majority opinion construes this to mean subject to the rights of the receipt holder, but that could only be true where the receipt holder was also the true owner. There is no language in this act which will forbid the bailee from delivering and accounting to the true owner, or that would deprive him of the right of that fact as a defense when sued in conversion by a bailor on a groundless claim, with no other pre-

text of right than that he was the holder of the storage receipt. In order to hold otherwise you must read something into this statute that is not there. The provision of section 494 says that the grain shall not be seized under any process, etc.; this clearly has no application to a conversion action. The majority opinion concedes that the true owner might maintain such action; then we say that it necessarily and logically results that one who stands in the shoes of the true owner may defend under the same right on which such owner might have instituted action.

To come back to the proposition that section 495 is declaratory of the common law rule and that the decisions under such rule are applicable to said section. The meat of the proposition is in the provision *"so far as the duties, liabilities and obligations of the bailee are concerned,"* the receipt shall be deemed *"conclusive evidence"* that the person to whom the same was issued is the owner of the grain. It is conceded by the majority opinion that this does not apply to the true owner of the grain, that a true owner may maintain such suit, but that it only applies as beween the bailor and bailee,—that it is not "conclusive" as to the rights or remedies of a true owner, but is "conclusive" against the bailee. That is precisely the holding under the common law rule— that as between the bailor and bailee the property is conclusively presumed to be the property of the bailor, but that the rule is not so broad in its conclusive effect as to affect the rights and remedies of a true owner, or the bailee when he defends, not under his own right as bailee, but under the right of the true owner, with whose right the bailee has become connected. Under section 495 and also under the common law rule, the conclusive estoppel is limited by, relates to and is applied in connection with the "obliga-- tions of the bailee." Now, what is the extent of the bailee's contractual obligation under this warehouse act? It is to restore to the bailor a like quantity of grain, or account for it. Under a technical literal construction, *as technical and literal* as my majority brethren are seeking to enforce against the bailee appellant in this case, there is nothing in the warehouse act requiring the bailee to *account* for the grain. The literal language only says to *restore* it *in like kind.* If the bailee was not in a position to restore it, in like kind, the bailor would have no remedy and by this avenue might be defrauded of his property, unless under the general com-

mon law he could compel the bailee to account for it under the word *"restore,"* and therefore I am of the view that under the *spirit* and *intent* of the provisions of the warehouse act, although not under the letter of the act, the bailee should be required to account for the grain. The obligation of the bailee, under the warehouse act, is to restore or account for a like quantity of grain, and is precisely the same as the common law obligation considered in Hentz v. The Idaho, and in Biddle v. Bond. Now, is there any reason in the world, by reason of anything that is contained in the warehouse act, that would prevent the bailee from accounting to the bailor in the manner referred to in Hentz v. The Idaho and in Biddle v. Bond? Respondent is asking appellant, not to restore a like kind of grain, but to account for it. He is in the accounting business against the bailee, and outside the technical literal wording of the warehouse act. From the standpoint of the majority opinion what is sop for the goose is sop for the gander. If appellant has already accounted to him for it in a manner recognized by law and equity, why is it not a good defense to plead and prove that fact? "The bailee's contract is to do with the property committed to him what his principal, the bailor, has directed,—to restore it or account for it; and he does account for it when he has yielded to the claim of one who has right paramount to that of the bailor. If there be an estoppel, to deny the bailor's title, it ceases when the bailment on which it is founded is determined by what is equivalent to an eviction by title paramount, that is by the reclamation of possession by the true owner." This is the direct holding in both Hentz v. The Idaho, and Biddle v. Bond. This doctrine seems to have been announced in Bacon's Abr. 5 Cyc. 172, note 62. Section 494 declares the transaction to be a bailment, and it must be subject to the general law of bailment, unless this statute has established a different rule. No amount of jugglery in interpretation or construction can read into this warehouse act anything touching upon the *termination* of the bailment, which overturns or is in conflict with this general rule or doctrine. No matter what the character of the bailment, nor how conclusive its effect, in other matters, unless there is some statute to prevent it, it is determined, terminated, finished and brought to a close when the bailee accounts to the true owner, which is, in effect, held to be an accounting to the bailor under his bailment

obligation. There is no apparent reason why such accounting would not terminate the contractual obligation of the bailee under the warehouse act as well as under the common law rule. The effect of both obligations is the same. Under this rule and doctrine, it seems to me, there can be no possible escape from the conclusion but what the answer interposed by appellant, alleged a good and sufficient legal defense. The merits can be tried out on the trial whether the appellant bailee did, in fact, yield and account to the true owner. The policy of our law is that all causes should be tried out on the merits to the end that exact justice be meted out between man and man. If he did in fact account and yield to the true owner then it necessarily follows that the claim of respondent is, as a matter of fact, groundless and unjust and he has no right in justice and fair dealing to recover. It is unjust and an inequitable hardship to place on appellant when you kick him out of court with a just defense and compel him to twice pay for the same grain, and the last payment to a person not entitled thereto, and whose only claim is based upon a purely technical fiction. Some suggestion has been made that respondent may have some lien or claim against appellant's share of said grain. If such is the fact it can be adjusted on the trial where both parties may receive their just dues.

There is another good ground, from which, as it appears to me, there is no possible escape, permitting the defense interposed by appellant. After appellant accounted to the true owner such owner then ceased to have any further interest in the subject matter of this action. If there had been no accounting to the true owner and this action had been commenced in its present form, or as an action in replevin, the true owner, with a right of action in himself to recover his property or its value in whosesoever hands it might be found, had the right, under our statute, to intervene and set up his right against both bailor and bailee. It is held in Bank v. Hurt, 99 Ala. 130, 12 So. 568, 19 L. R. A. 701, 42 Amer. Stat. Rept. 38, that a warehouse statute of the same nature as ours, cannot and does not undertake to give the holder of the receipt any better title to the property than would be given by the actual possession of the property itself. When the appellant accounted to and paid the true owner for the share of the grain in controversy he thereby became the.

equitable assignee and subrogated to all the legal rights and remedies of the true owner,—by such accounting he became the real party in interest of the subject matter of this action, instead of being a mere bailee thereof. There is nothing in the warehouse act or in any other statute of this state that would prohibit and estop such bailee from acquiring such interest under the circumstances alleged. Whenever you hold that such bailee is estopped from acquiring such interest under the circumstances of this case, then you hold that the storage receipt gives better title than would the possession of the grain itself. If the actual grain was in the possession of respondent, can there be any reasonable question but what the true owner or his assignee or successor in interest might maintain an action for its possession or value? In Bank v. Hurt, the learned court said: "We cannot conceive that it could have been within the contemplation of the Legislature that the provisions of the statute would enable a thief, by depositing the stolen property with a warehouseman, and obtaining a receipt for it in due form, to confer upon an innocent purchaser for value and in good faith a claim to the property which would prevail against that of the true owner." The case of Collins v. Ralli, 20 Hun 246, affirmed by the Court of Appeals, 85 N. Y. 637, holds to the same effect. Now, we have seen in Hentz v. The Idaho and in Biddle v. Bond and in some other well considered cases, that the legal position is precisely the same whether the bailor fraudulently stole the property from the true owner, or was only mistaken as to the title of the true owner. The appellant is defending as the successor in interest of the true owner, and not as a bailee under the provisions of the warehouse act. That bailment had been terminated by what was equivalent to eviction by title paramount. The appellant is setting up *no right or title in himself as such bailee,* but is defending solely under the title and authority of the true owner. The right under which he is making this defense is wholly without the "conclusive" effect of section 495. *The same transaction (accounting to the true owner) which terminated the bailment, also, at the same time, freed appellant from the "conclusive" effect of the warehouse statute,* by extinguishing the obligation. The majority opinion says that the bailee cannot thus be freed from this conclusive effect of the act without violating another provision of the act. We of the mi-

nority in all seriousness would like to know just what other part of the act has thus been violated that would prevent the bailee from pleading and showing that he had accounted to the bailor and satisfied the obligation to return or account for the grain. Our view, under the authorities cited, is that *when the bailee accounted to the true owner he in fact and legal effect accounted to the bailor.* Such is the direct holding in Hentz v. The Idaho, Biddle v. Bond and the excerpt from Bacon's Abridgement, heretofore quoted. The obligation of the bailee, under the act and under the storage receipt, was to return or account for the grain. Does this warehouse act in any manner undertake to limit or say in what manner this accounting shall be made? We think not. When the bailee has legally accounted and satisfied the obligation of this storage receipt, ordinarily, in any other case, it would extinguish the obligation. We fail to comprehend why there should be a different rule applied to this particular case. Ordinarily when a party has paid and satisfied his legal obligation it ought to be a good defense, whether the obligation was the result of statute or simple contract. What sacred halo surrounds this warehouse act, that it is not subject to the ordinary rules of construction and interpretation? We will concede for the sake of the argument that the bailee, *under no possible circumstances,* under this warehouse act, could dispute the bailor's title, yet, we think that would not prevent the bailee from setting up the defense, when sued by the bailor in conversion, that he had previously legally accounted to the bailor, and thereby satisfied, terminated and extinguished the obligation which constituted the bailor's cause of action. Disputing the bailor's title is one thing; pleading an accounting and extinguishment of plaintiff's cause of action is an entirely different thing. Disputing the bailor's title has no application to or connection with the question of such accounting, being based upon entitrely different grounds. Such an accounting is not an *exception* to the rule that the bailee cannot dispute the bailor's title; but is wholly outside such rule. Such accounting terminates the bailment relation because it extinguishes and satisfies the bailee's obligation, just the same as the payment of a note extinguishes and satisfies the obligation of the maker thereof. Such accounting has no application to the rule that the bailee cannot dispute the bailor's title. Hale on Bailments, p. 34. We do not think that the de-

fense of having accounted to the bailor is in violation of any part of this act; if it is, then there would be nothing in the world to prevent the bailor from recovering a dozen or more times for the same grain from the bailee, just so long as the bailee would keep on paying. Under the construction given to this act by the majority opinion the bailee never could avail himself of the defense of having satisfied, by an accounting to the bailor, the obligation to restore the grain. Now, we are not discussing the wisdom of this act at all; but are contending that it should be interpreted under the ordinary rules of construction, in the light of and in connection with surrounding pre-existing laws upon the same subject. (36 Cyc. 1144-1145), and for the accomplishment of the purpose for which it was expressly enacted, viz., to establish a bailment relation instead of a sale. We are opposed to what seems to us to be an inapplicable, technical and hide-bound construction, which reads into this act "straw-men" not to be found therein, and which creates distinctions and differences where there are none, and which construction entirely loses sight of the spirit and intent of the law and produces an unholy and dishonest result. The majority opinion carries the conclusive effect of section 495 beyond all reasonable bounds and makes it apply to a defense wholly foreign and outside the question of the disputing of the bailor's title,—the defense here involved has nothing to do with his title.

We agree with the majority opinion that the bailee may avail himself of the provisions of sections 97 and 98 of Code Civ. Pr., but to stick to the text, our contention is that there is nothing in these sections either, as there is nothing in the warehouse act, which prevents the bailee from interposing the defense in question. It will be observed that said section 98 clearly implies that when the bailee *knows* to whom the property rightfully belongs he may deliver the same to the rightful owner, the statutory provision being that when the bailee is "unable to determine" to whom it belongs he may deliver the same into court as provided by these sections of the statute.

Again, we are of the view that the warehouse act never intended to repeal or overturn well established general rules in relation to agency. The respondent was at least a self constituted agent or trustee of the true owner of the said one-fourth share of

grain in delivering the same to appellant and taking a receipt therefor in his own name. The true owner still remained the beneficial owner. Under such circumstances the bailor could not be heard to say that the deposit was not made for the benefit of the true owner. In Gates v. Thede, 91 Ill. App. 603, and under a warehouse act, where grain was delivered to a public warehouse by the owner's agent, and storage tickets wrongfully taken in the name of. the agent, and where the warehouseman redelivered the grain to the true owner on demand, it was held that the agent could not thereafter maintain conversion against the warehouseman. In Hale on Bailments, p. 32, the rule is stated that a bailment by an agent is a bailment for the principal, and a redelivery may be made to the principal direct.

The measure of damage in conversion is fixed by statute in this state. Secs. 2286, 2315 and 2330 Civil Code. Respondent's actual damage was the value of the three-fourths interest owned by him, with interest. After the owner of the other one-fourth interest had made demand on the bailee, and had been paid for his share of the grain, the respondent could only recover the value of what belonged to him. Grain being something that can be divided without injury is subject to the aliquot share rule as between tenants in common, under which each is entitled to and may recover his proportionate aliquot share, and the same rule does not apply as to things which are indivisible, as between tenants or owners in common. Hence, the true owner was entitled to demand and receive from appellant his one-fourth share in said grain regardless of the other three-fourths.

The majority opinion is opposed by every rule of reason— by every principle of right and justice. It is opposed by every text writer who has ever written on the subject. It is opposed by the highest judicial authority in this country and in England. The most careful and diligent research will fail to reveal a single reason or authority to sustain it. The demurrer should have been overruled and the order appealed from should be reversed.

SMITH, P. J., concurs.