GABRIEL SALANT and Others, Respondents, v. PENNSYLVANIA RAILROAD COMPANY and WILLIAM G. McADOO, as Director General of Railroads, Appellants.

First Department, July 3, 1919.

Carriers — when goods shipped by carrier are exempt from attachment or levy — right of owner to replevin goods in possession of carrier — bailment — principal and agent — Personal Property Law, section 210, and Federal Bill of Lading Act, section 23, construed — larceny — act of Congress placing railroad systems under Federal control and order of Director General of Railroads, construed — constitutional law — due process of law.

In order that goods shipped, for which an order bill of lading has been issued by the carrier, shall be exempt from seizure or levy by judicial

process without the surrender of the bill to the carrier or it being impounded by the court, the goods must have been delivered to the carrier " by the owner or by a person whose act in conveying the title to them to a purchaser for value in good faith would bind the owner."

Where plaintiffs sent material to a manufacturer to be made into shirts and returned and agreed to pay a stipulated price the next week after delivery and the manufacturer sent the shirts to the plaintiffs over the defendants' railroad with an order bill of lading to which was attached a sight draft, the plaintiffs upon refusing to honor said draft were entitled to maintain an action in replevin against the defendants for the goods, notwithstanding the acts of Congress placing railroad systems under Federal control.

The transaction between the plaintiffs and the manufacturer was one of bailment for the benefit of both parties, the title to the material being at all times in the plaintiffs.

The fact that the manufacturer was to return the goods did not change the relation of the parties from bailor and bailee to that of principal and agent.

Under section 23 of the Federal Bill of Lading Act and section 210 of the Personal Property Law, providing that goods for which an order bill or a negotiable bill has been issued cannot be attached while in the possession of the carrier, etc., the test is not was the person who delivered the goods authorized to ship them and to receive a bill of lading, but was he a person authorized to convey title to the goods. It must be a person with authority to sell the goods and give a good title to a *bona fide* purchaser.

When the aforesaid manufacturer attached the order bill of lading to his draft upon the plaintiffs for which he had no claim against the goods represented by the bill, he wrongfully violated the contract with the plaintiffs and came perilously near committing the crime of larceny.

There is no inhibition in either section 23 of the Federal Bill of Lading Act or section 210 of the Personal Property Law against replevin by the lawful owner.

General order No. 43 of the Director General of Railroads, providing " that no moneys or other property under Federal control or derived from the operation of carriers while under Federal control shall be subject to garnishment or like process in the hands of such carriers or any of them, or in the hands of any employee or officer of the United States Railroad Administration," if held to apply to goods of private citizens, while in course of transportation, would be void as being beyond the powers of the Federal Administrator as conferred by the act of Congress (40 U. S. Stat. at Large, 451, chap. 25).

Section 10 of the aforesaid act of Congress relates only to the operation and control of the railroad systems and the property engaged directly as an instrumentality of such operation, on the ground that it was necessary to enable the government to transport troops, munitions and supplies.

To hold that the lawful owner of goods cannot take them by judicial process because at the time they happen to be under Federal control, merely for transportation for hire, would violate the constitutional provision that no person shall be deprived of his property without due process of law.

SMITH and PHILBIN, JJ., dissented, with opinions.

APPEAL by the defendants, Pennsylvania Railroad Company and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 21st day of January, 1919, denying their motion to dismiss the complaint and to vacate and set aside a requisition in replevin.

*G. Noyes Slayton* of counsel [*Burlingham, Veeder, Masten & Fearey,* attorneys], for the appellants.

*Louis Salant* of counsel [*Aronson & Salant,* attorneys], for the respondents.

PAGE, J.:

In order that goods shipped, for which an order bill of lading has been issued by the carrier, shall be exempt from seizure or levy by judicial process without the surrender of the bill to the carrier or it being impounded by the court, the goods must have been delivered to the carrier " by the owner or by a person whose act in conveying the title to them to a purchaser for value in good faith would bind the owner." (Fed. Bill of Lading Act, Aug. 29, 1916, in effect Jan. 1, 1917; 39 U. S. Stat. at Large, 542, chap. 415, § 23; Pers. Prop. Law [Consol. Laws, chap. 41; Laws of 1909, chap. 45], § 210, added by Laws of 1911, chap. 248.)* One of the questions, therefore, the answer to which is determinative of this appeal, is, Was Shirk such a person? The material was cut into forms by the plaintiffs in New York city and sent to Shirk, to be manufactured and returned to the plaintiffs. Payment for the work done was not to be made prior to or upon delivery of the manufactured article, but a stipulated price per dozen was to be paid the next week after delivery. This transaction was one of bailment for the benefit of both parties, in which

* See, also, Penn. Uniform Bills of Lading Act (Penn. Laws of 1911, p. 843), § 24; 5 Purdon's Digest (13th ed.), 5336, § 102.— [REP.

the bailee was to perform work upon the property of the bailor for a reward, or what was termed in the Roman law, a *locatio operis faciendi*. The title to the material was at all times in the plaintiffs; the materials added by Shirk in performing his contract became by accession, when joined with the materials furnished by the plaintiffs, the property of the latter, they having furnished the principal part, the part furnished by Shirk being accessorial merely. (*Mack* v. *Snell*, 140 N. Y. 193, 195; *Sattler* v. *Hallock*, 160 id. 291, 298.) The fact that Shirk was to return these goods did not change the relation of the parties from bailor and bailee to that of principal and agent. The obligation to return them arose under the original contract of bailment. But even if, as Mr. Justice Smith asserts, the relation was changed, the agent would only have the right to ship the goods on a non-negotiable bill of lading. He would have no right of his agency to appropriate them to his own use, or charge them with a lien, for his own benefit, for which his principal was not liable. Under section 210 of the Personal Property Law, the test is not was the person who delivered the goods authorized to ship them and to receive a bill of lading, but was he a person authorized to convey title to the goods. It must be a person with authority to sell the goods and give a good title to a *bona fide* purchaser. We must bear in mind that the work on these goods, under the contract, was not to be paid for on or before delivery, but one week after delivery. Shirk, therefore, did not have any possessory right under an artisan's lien. When Shirk attached the order bill of lading to his draft upon the plaintiffs for a sum of money for which he had no claim against the goods represented by the bill, and thereby subjected the goods to a lien for the amount of the draft, he came perilously near committing the crime of larceny. (Penal Law, § 1290, subd. 2.) At all events, as the court said in the case of which the above is a paraphrase, he wrongfully violated the contract with those who had intrusted the property to his care. (*Eytinge & Co., Inc.,* v. *Atlantic Transport Co.,* 160 App. Div. 635, 638.) Had Shirk sold the goods, he would have committed larceny. It is a trite maxim of the law that "a thief can give no title."

Furthermore, there is no inhibition in the statute against replevin by the lawful owner. The language of the statute is that the goods " can not thereafter, while in the possession of the carrier, be attached by garnishment or otherwise or be levied upon under an execution." Attachment and execution are issued against the goods of the owner to hold for or to satisfy a debt of the owner in an action against the owner thereof; while replevin is an assertion by the owner of his right of possession of property wrongfully withheld. (See *Roberts* v. *Stuyvesant Safe Deposit Co.*, 123 N. Y. 57, 65, 67.) In the instant case the defendant incurs no risk of damages by the delivery of the goods, as the right of the true owner may be set up as a defense by the carrier, where the property has been delivered up to him by the carrier, whether voluntarily or pursuant to process in a suit instituted for that purpose. Especially is this true where, as in the present case, the carrier immediately notified the shipper of such taking. (*Bliven* v. *Hudson River .R. R. Co.*, 36 N. Y. 403; *Western Transportation Co.* v. *Barber*, 56 id. 544, 551; *Roberts* v. *Stuyvesant Safe Deposit Co.*, supra; *Eytinge & Co., Inc.*, v. *Atlantic Transport Co.*, supra; *The Idaho*, 93 U. S. 575, 578; *Wells Fargo & Co.* v. *Ford*, 238 id. 503, 505.)

The appellants rely upon General Order No. 43 of the Director General of Railroads, as interpreted by a judge of the District Court of the United States in the case of *United States* v. *Kambeitz* (256 Fed. Rep. 247, 250), as prohibiting this replevin. It reads as follows: " It is therefore ordered, that no moneys or other property under Federal control or derived from the operation of carriers while under Federal control shall be subject to garnishment, attachment, or like process in the hands of such carriers, or any of them, or in the hands of any employee or officer of the United States Railroad Administration." (Official U. S. Bulletin, vol. 2, No. 405, p. 1.) This was held in the case last above cited to apply to goods of private citizens while in course of transportation. In my opinion, such construction does violence to the intent and meaning of the order, and, furthermore, that if it was intended to be so applied, it would be void, being beyond the powers of the Federal Administrator as conferred by the act of Congress (40 U. S. Stat. at Large, 451, chap.

25). The recitals contained in and preceding the order show that the purpose was to safeguard the wages of employees from garnishee process while in the possession of the Federal Administrator, as such practice was prejudicial to the operation of the lines and systems of transportation. The act of Congress (*supra*) at section 10 provides: " That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other Act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government. * * * But no process, mesne or final, shall be levied against any property under such Federal control." (40 U. S. Stat. at Large, 456, § 10.)

To understand the limitations of the words " Federal control," reference should be had to the first section of the act, which states: " That the President, having in time of war taken over the possession, use, control, and operation (called herein Federal control) of certain railroads and systems of transportation (called herein carriers) * * *." (40 U. S. Stat. at Large, 451, § 1.) It is clear that this section of the act relates only to the operation and control of the railroad systems and the property engaged directly as an instrumentality of such operation, on the ground that it was necessary to enable the government to transport troops, munitions and supplies. Only so far as such necessity justified the use of the war power of the government, could the same be sustained under the Federal Constitution. In all other respects the laws of the States were left in full operation. To hold that the lawful owner of goods could not take them by judicial process, because at the time they happened to be under Federal control, not for government use but merely for transportation for hire, would violate the provision of the Federal Constitution, that no person shall be deprived of his property without due process of law. Nor can Congress

deprive the citizens of this country of the right to resort to the courts which have been established by the several States to prosecute or defend actions and suits, according to the established usage and practice, in accordance with the law of the land. (See *Ex Parte Milligan*, 4 Wall. 2; *Ochoa v. Hernandez*, 230 U. S. 139, 161; *Dantzler Lumber Co.* v. *Texas & P. Ry. Co.*, [Sup. Ct. Miss., Mch. 1919] 80 So. Rep. 770.)

It is my opinion that the plaintiffs had the right to resort to replevin proceedings to recover their property, and that there is nothing in the acts of Congress placing railroad systems under Federal control that in any way impairs that right.

The order should be affirmed, with ten dollars costs and disbursements.

LAUGHLIN and DOWLING, JJ., concurred; SMITH and PHILBIN, JJ., dissented.

SMITH, J. (dissenting):

The plaintiffs sent some shirt materials to one Shirk at East Earl, Penn. Shirk was under a contract with the plaintiffs to make up shirts from those materials at a stipulated price per dozen to be paid for the next week after delivery. These shirts were made up and were sent to the plaintiffs over the defendant's road, with an order notify bill of lading, to which was attached a sight draft. The draft and bill of lading were presented to the plaintiffs in advance of the arrival of the shipment with a demand for the payment of the draft before three P. M. the same day, as a condition of the indorsement of the bill of lading, which indorsement was made a condition of the right to deliver by the defendant company. Plaintiffs, however, refused to honor the draft and began an action in replevin against these defendants for the goods. The sheriff took the goods under replevin process, tendering to the carrier the amount of the carrying charges, which tender was refused. This motion was then made by the defendants to have this replevin process set aside and for a return of the property taken thereunder. The motion was denied and from the order denying the motion this appeal has been taken.

Section 23 of the Federal Bill of Lading Act provides: " That if goods are delivered to a carrier by the owner or by a person whose act in conveying the title to them to a purchaser for value in good faith would bind the owner, and an order bill is issued for them, they can not thereafter, while in the possession of the carrier, be attached by garnishment or otherwise or be levied upon under an execution unless the bill be first surrendered to the carrier or its negotiation enjoined. The carrier shall in no such case be compelled to deliver the actual possession of the goods until the bill is surrendered to him or impounded by the court." (39 U. S. Stat. at Large, 542, § 23.) This provision also is found in section 210 of our Personal Property Law (Consol. Laws, chap. 41 [Laws of 1909, chap. 45], § 210, as added by Laws of 1911, chap. 248).

Two questions then arise for determination: *First.* Was the property delivered to the carrier by the owner or a person whose act in conveying title to them to a *bona fide* purchaser for value in good faith would bind the owner? In *Abe* v. *Pennypacker*, in the Passaic County, N. J., Circuit Court (not yet reported), this exact question was presented. One Pennypacker, who was a bailee of the plaintiff in Pennsylvania, shipped from Pennsylvania to the plaintiff in New Jersey, with an order notify bill of lading, goods which, in fact, belonged to the plaintiff. It was held in that case by Judge MINTURN that the instructions to the bailee to ship to the owner constituted the bailee the agent of the owner, so that the shipment in question was in reality delivered to the carrier by the owner himself, *Qui facit per alium facit per se,* and that such goods could not be taken from the carrier by replevin process. The same rule was held in the case of *Salant* v. *Pennsylvania Railroad Company,* by Judge WILSON in the Municipal Court of New York city in a decision dated March 15, 1917. Even if this delivery to the carrier be not deemed to be made by the owner through his agent, nevertheless the agent was authorized to make the shipment. The taking of the bill of lading, as it was taken, was within the scope of his authority, and his negotiations of that bill of lading would pass title to a purchaser for value. (Pers. Prop. Law, §§ 217, 218, 224, 237, as added by Laws of 1911, chap. 248.)

As was said by Vice-Chancellor LANE, in the case of *Brimberg* v. *Hartenfeld Bag Co.* (N. J. Eq., unreported): " The purpose of the legislation undoubtedly was to protect goods in transit and in possession of a carrier against seizure until the carrier should be first liberated from liability and attack by the surrender of the order bill. The Legislature has made the bill the *res* rather than the goods." While then a mere bailee ordinarily has not authority to pass title to a purchaser in good faith, where that bailee is authorized to make shipment, he may take a bill of lading which he may negotiate and, in this way, give good title to a purchaser for value and in good faith as against the owner. In either aspect, therefore, whether the shipment be deemed to be made by the owner or by a person whose act in passing title to them to a purchaser for value would bind the owner, the case comes within the statute.

*Second.* Is replevin process included within the terms of this statute? It is claimed that because the expression is used " by garnishment or otherwise," the process there referred to is simply in the nature of an attachment in a proceeding brought, not by the owner, but by a creditor, in support of a right of action for moneys due. But the section also protects such property from levy by execution. If judgment be obtained in this replevin action, the only way to enforce it is by execution. (Code Civ. Proc. §§ 1240, 1373, 1731.) If, then, this property cannot be taken by execution in enforcement of the final judgment which this plaintiff seeks, it would be a strange anomaly to hold that it could be taken by mesne replevin process and thus held to no purpose. This fact gives significance to the expression of the statute that the goods cannot be attached by garnishment " or otherwise." The statute was passed to meet all phases of interference with the possession of the railroad company through different States wherein different legal proceedings are applied to the impounding or attachment of property, so that the words " or otherwise " are not necessarily interpreted by the word " attachment " as indicating like process. And this was so held in the cases of *Salant* v. *Pennsylvania Railroad Company* and *Abe* v. *Pennypacker* (*supra*).

This conclusion, I believe to be within the principle of the statute. Where goods are shipped and a bill of lading is

taken, as said by Vice-Chancellor Lane in the *Brimberg Case* (*supra*): " The Legislature has made the bill the *res* rather than the goods." Even if the bailee were not authorized to take a " negotiable" bill of lading, with authority to ship the goods and take a bill of lading, the taking of a negotiable bill was within the scope of his authority and its negotiation to a purchaser for value would bind both the bailee and the bailor, the consignor and the consignee therein. (Pers. Prop. Law, §§ 224, 237, as added by Laws of 1911, chap. 248.) If the policy of the statute be as expressed, to protect the carrier as against interference with those goods except upon a surrender or impounding of that bill of lading, the necessity therefor exists in the case at bar to as great an extent as to any case which could come within the provisions of the statute.

In my judgment, therefore, this replevin process was improperly issued and the motion to set the same aside should have been granted.

The order should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

Philbin, J., concurred.

Philbin, J. (dissenting):

The bailee had authority to take a bill in order to return the goods to plaintiffs and the latter intended he should do so.

The bailee had no authority to take an order bill and his doing so was " a breach of duty." (Pers. Prop. Law [Consol. Laws, chap. 41; Laws of 1909, chap. 45], § 224, as added by Laws of 1911, chap. 248.)

The validity of the negotiation of a bill is not impaired by the fact that such negotiation was a breach of duty on the part of the person making the negotiation, or by the fact that the owner was deprived of possession by fraud, if transferee gave value in good faith without notice. (Id.)

While such a breach of duty by the bailee would constitute larceny (Penal Law, § 1290), the plaintiff bailor having vested the bailee with ostensible authority in giving him the power to take a bill of lading, could not question for that reason the title of a *bona fide* purchaser.

The statute does not say a person authorized to bind the

owner but a person whose act in conveying title to a purchaser in good faith, etc., would bind the owner. It makes no difference, therefore, if it subsequently turns out that the person had no actual authority. The test is, could the person clothed with apparent authority pass title to a *bona fide* purchaser.

The bailee in the instant case, in my opinion, was placed in such a position by the plaintiff.

I think, therefore, the order should be reversed and the motion granted.

Order affirmed, with ten dollars costs and disbursements.