GOLDYE MILLER, Respondent, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

First Department, May 18, 1923.

Carriers — action by assignee of shipper to recover value of goods consigned on order bill of lading in interstate shipment and delivered to notify-party without surrender of bill — shipper had agreed to sell goods to notify-party who made deposit — carrier offered to pay shipper difference between balance of deposit and price of goods — assignee took bill after events stated with full knowledge of contract between shipper and notify-party — assignee not protected under Bills of Lading Act, § 11 — delivery to notify-party under circumstances is good defense — sole effect of bill of lading was to secure performance by notify-party pursuant to Personal Property Law, § 101, subd. 2 — carrier may deliver goods to true owner without liability to shipper — Bills of Lading Act, §§ 9, 17-19, construed — Penal Law, § 365, making it a crime to deliver goods without surrender of bill of lading must yield to Federal legislation in conflict therewith.

In an action by the assignee of a bill of lading to recover from the carrier the value of the goods represented by the bill, it appeared that the assignor agreed to sell the goods in question to the notify-party in the bill of lading; that the notify-party made a deposit with the assignor to be applied in payment for goods shipped; that the goods were shipped from a point in New Jersey, on an order bill of lading, and on arrival at the point of destination in New York, were surrendered to the notify-party without requiring the production and surrender of the order bill of lading; that on the receipt of the car in question and another car, the notify-party tendered to the assignor the difference between the balance of the deposit and the price of the goods in the two cars, but the assignor refused to accept the payment and disposed of the contents of one of the cars; that the carrier is willing to pay the difference between the balance on deposit and the price of the goods in the car actually received by the notify-party; and that the assignee of the bill of lading took the same with full knowledge of the facts here stated and of the contract between the assignor and the notify party.

*Held*, that the assignee is not protected by the provisions of section 11 of the Bills of Lading Act providing that the carrier is liable if it delivers the entire shipment and " fails to take up and cancel the bill " to a purchaser of the bill for value and in good faith who acquired his title to the bill either after or before such delivery, since the assignee is not a *bona fide* purchaser for value and in good faith, and did not allege that she was such a purchaser nor did she allege that she is the purchaser whom the act protects and is one thus entitled to assume that the carrier has not delivered the goods and will not thereafter deliver them except to the person who holds the bill of lading; the assignee then is in no better position than the assignor.

It was a good defense to this action that the goods in question were delivered to the notify-party who was the actual owner thereof under the contract between it and the assignor.

The sole effect of the issuance of an order bill of lading to the assignor was to secure performance by the buyer of its obligations under the contract pursuant to subdivision 2 of section 101 of the Personal Property Law.

While section 19 of the Bills of Lading Act provides that " no right or title of a third person, unless enforced by legal process, shall be a defense to an action brought * * * by the holder of an order bill against the carrier for failure to deliver the goods on demand," it is clear that under section 9 and sections 17 and 18 of the Bills of Lading Act there was intended to be conferred on carriers transporting goods in interstate commerce the right to deliver the goods to the true owner and to make such delivery a complete defense to an action by a shipper who holds an order bill of lading and who sues to recover damages for failure to deliver goods to him.

In so far as section 365 of the Penal Law, making it a crime for a carrier to deliver property for which a negotiable bill of lading has been issued unless the bill is surrendered, conflicts with Federal legislation regulating interstate shipments, it must yield thereto.

APPEAL by the defendant, New York Central Railroad Company, from a determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 25th day of October, 1922, affirming a judgment of the City Court of the City of New York in favor of the plaintiff and an order of said City Court denying defendant's motion for a new trial made upon the minutes.

*Alexander S. Lyman* [*William Mann* of counsel], for the appellant.

*McLaughlin & Stern* [*Martin Lippman* of counsel], for the respondent.

McAVOY, J.:

The controversy here is over the right of a railroad carrier to deliver goods to other than the holder of a straight bill of lading or to an indorsee of an order bill of lading. The complaint shows one Leo L. Lowy was the owner of certain scrap iron of the value of $1,538.82 which he delivered to the Central Railroad of New Jersey in August, 1920, at Warners, N. J., for transportation to Albany, N. Y.; that the goods were consigned to the order of Lowy at Albany, and the Central Railroad of New Jersey accepted the merchandise for such transport for compensation; that the Central Railroad of New Jersey delivered to the New York Central Railroad, the defendant herein, the merchandise mentioned under the said agreement to transport to Lowy at Albany, as connecting carrier, and under the same terms as had been arranged with the initial carrier, the Central Railroad of New Jersey, the New York Central Railroad transported the merchandise to Albany, and that Lowy prior to the commencement of this action demanded that the defendant deliver the merchandise to him and offered to pay the freight and other lawful charges, and defendant has failed to deliver the merchandise to Lowy. It is alleged that without consent of Lowy the defendant has wrongfully delivered the merchandise to the United American Iron and Steel Company

or some other person unknown to Lowy, although defendant knew the merchandise was consigned to him. The rights in the merchandise and to the claim against the defendant for its wrongful delivery have been assigned to the plaintiff who demands the value of the merchandise.

The question of the right to deliver to a third person, said to be the lawful owner where there is an outstanding bill of lading to seller or order, arises on a judgment in favor of plaintiff, assignee of the shipper, in the City Court, giving damages for the value of the contents of the car, which has been affirmed in the Appellate Term. At the City Court the trial justice struck out the defense which attempted to set up by way of offset the alleged claim of the American Iron and Steel Company against the plaintiff's assignor.

The terms of the bill of lading delivered to the shipper state that "the surrender of this original order bill of lading properly endorsed shall be required before the delivery of the property. Inspection of property covered by this bill of lading will not be permitted unless provided by law or unless permission is endorsed on this original bill of lading or given in writing by the shipper." As was indicated, the goods were consigned to order of Lowy at Albany, "Notify United American Iron & Steel Co. at Hudson, N. Y."

The defendant delivered the iron to the United American Iron and Steel Company without requiring the production and surrender of the order bill of lading. It contends that it was justified in this because Lowy had agreed to sell the United Iron and Steel Company all the scrap iron and materials then on the premises of the American MacKenna Process Company at Warners, N. J., and under the terms of payment had received $2,500 in accordance with the agreement and had made various shipments which were paid for by the United American Iron and Steel Company.

Car "C. N. J. 80357" and another car shipped by Lowy from Warners on the same day contained the balance of the property which Lowy had theretofore agreed to ship, and the defendant claims that the buyer was entitled to deduct the balance of the deposit made by it with Lowy amounting to $971.69 from the value of the material in the two cars.

On receipt of the car in question and the other car shipped on the same day, the American Iron and Steel Company offered to pay Lowy $1,101.92, which was the difference between the value of the shipments of the cars and the amount left of the deposit with Lowy. He refused to accept this payment and thereafter disposed of the contents of one of the cars, that is, the Virginian 16505, to some other person. The carrier defendant then delivered the material in the car "C. N. J. 80357" to the buyer. At the

time of this delivery the balance on deposit with Lowy of $971.69 together with the $11.16 constituted the value of the contents of the car, and defendant asserts that it has been at all times since delivering the car to the United American Iron and Steel Company willing to pay this difference, and that as such carrier, it is, therefore, entitled to a dismissal of the complaint against it for diversion of the car. While under sections 9 and 10 of the Federal Bills of Lading Act (39 U. S. Stat. at Large, 540) the carrier's liability to a person having right of property or possession in the goods is not released if it delivers the goods to the consignee named in a straight bill of lading or to the holder of an order bill of lading properly indorsed, if prior to making the delivery it was requested by the person entitled to possession not to make such delivery or had information that such person was not legally entitled to the possession of the goods, and under section 11 of said Act (39 id. 540) the carrier is liable if it delivers the entire shipment and " fails to take up and cancel the bill " to a purchaser of the bill for value and in good faith who acquired his title to the bill either after or before such delivery, yet the carrier is not liable to a person who is not a *bona fide* purchaser for value and in good faith. When a carrier delivers to a consignee or transferee of the bill of lading who does not show that he did not take, subject to the rights in and to the merchandise of his transferror, it is not discharged from liability to the true owner. Here the transferror took back the bill of lading after the events in question with full knowledge of the buyer's rights under the agreement for payment. The assignee is in no better position than he, and since this plaintiff does not allege in the complaint that she was the purchaser of the bill of lading for value and in good faith, she is not entitled to the benefits of the provisions of section 11 of the Federal Bills of Lading Act, whose provisions were heretofore given. Nor does she allege that she is the purchaser whom the act protects and is one thus entitled to assume that the carrier has not delivered the goods and will not thereafter deliver them except to the person who holds the bill of lading. (*Pere Marquette Railway* v. *French & Co.*, 254 U. S. 538, 546.) The carrier may always set up delivery to the true owner of the goods, and may always show in an action brought by the bailor subsequently the right of possession of the third person to whom it has delivered the property.

The defense here shows that at the time Lowy shipped the car, there remained in his possession, of the $2,500 deposited at the time of the inception of the agreement, $971.69, which his agreement provided was to be applied in payment of the material in the last car shipped; that he was tendered the difference

in amount between the sum left and the value of the material in the cars, and that upon such tender the United American Iron and Steel Company was entitled to the possession of the property, and thus there was a justification for the carrier to deliver the property to it. In *Salant* v. *Pennsylvania R. R. Co.* (188 App. Div. 851; affd., 231 N. Y. 607), Mr. Justice PAGE writing the opinion says (p. 855): " In the instant case the defendant incurs no risk of damages by the delivery of the goods, as the right of the true owner may be set up as a defense by the carrier, where the property has been delivered up to him by the carrier, whether voluntarily or pursuant to process in a suit instituted for that purpose. Especially is this true where, as in the present case, the carrier immediately notified the shipper of such taking. [*Bliven* v. *Hudson River R. R. Co.*, 36 N. Y. 403; *Western Transportation Co.* v. *Barber*, 56 id. 544, 551; *Roberts* v. *Stuyvesant Safe Deposit Co.*, 123 id. 57; *Eytinge & Co., Inc.,* v. *Atlantic Transport Co.*, 160 App. Div. 635; *The Idaho*, 93 U. S. 575, 578; *Wells Fargo & Co.* v. *Ford*, 238 id. 503, 505.] "

Here the sole effect of the issuance of an order bill of lading to Lowy, the seller, was to secure performance by the buyer of its obligations under the contract pursuant to section 101, subdivision 2, of our New York Personal Property Law (as added by Laws of 1911, chap. 571), known as the Sale of Goods Act. *Standard Casing Co.* v. *California Casing Co.* (233 N. Y. 413) rules that where delivery of the goods to the buyer, or to a bailee for the buyer, is made in pursuance of the contract, and where the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods remain at the buyer's risk from the time of such delivery. It is also said there (p. 417): " ' If, except for the form of the bill of lading the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract.' "

Title passes in an f. o. b. contract to the buyer from the moment of delivery to the carrier, and although the rule is subordinate to intention, the fact that the bill of lading is made out to the seller or order does not indicate an inconsistent intention. The buyer owns the goods and a delivery to him ought to be a discharge of the carrier's liability since he was the true owner. To permit the judgment here to stand permits a recovery by one who is not the true owner of the goods, and such a result cannot be permitted, except in a case where the rights of the purchaser in good faith and for value of the bill of lading are involved.

While section 19 of the Federal Bills of Lading Act (39 U. S. Stat. at Large, 541) provides that " no right or title of a third person, unless enforced by legal process, shall be a defense to an action brought   *   *   *   by the holder of an order bill against the carrier for failure to deliver the goods on demand," and by virtue of sections 1 and 45 of said Act (39 id. 538, 545, respectively) is applicable to this case, the holding (*Pere Marquette Railway* v. *French & Co., supra*) which declares a carrier is justified in delivering the goods to the person legally entitled to the possession, and sections 17 and 18 of the Federal Bills of Lading Act (39 id. 541), which give the carrier the right to compel adverse claimants to interplead, nevertheless, make it clear that under section 9 and sections 17 and 18 it was intended to confer on carriers transporting goods in interstate commerce the right to deliver the goods to the true owner and to make such delivery a complete defense to an action by a shipper who holds an order bill of lading, and who sues to recover damages for failure to deliver goods to him. It seems to me that the defense, if sustained, would compel the conclusion that when plaintiff's assignor delivered the iron for shipment, the United American Iron and Steel Company became the owner thereof, and that defendant had the right to deliver the goods in accordance with the direction of the United American Iron and Steel Company, and was thereby excused from complying with the demand made by plaintiff seller as the holder of the order bill of lading.

In so far as section 365 of the Penal Law of this State, prohibiting the delivery of property for which a negotiable bill of lading has been issued, unless the bill is surrendered, conflicts with the Federal law regulating interstate shipments, it must be deemed to give way to the Federal legislation upon the subject which has supremacy in regulation of interstate shipments of commerce. Where there is conflict the State legislation must give way, and where Congress acts so as to manifest its purpose to exercise its constitutional authority in respect to interstate commerce, the regulating power of the State ceases to exist. (*Adams Express Co.* v. *Croninger*, 226 U. S. 491.) I think the determination of the Appellate Term and the judgment of the City Court should be reversed and a new trial ordered, with costs to appellant in all courts to abide the event.

CLARKE, P. J., DOWLING, SMITH and MERRELL, JJ., concur.

Determination of the Appellate Term and judgment and order of the City Court reversed and a new trial ordered, with costs to appellant in all courts to abide the event.